UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-4244-BSS

UNITED STATES OF AMERICA,

vs.

JERMAINE WILLIAMS,

Defendant.
_____/

## DETENTION ORDER

Pursuant to Title 18 U.S.C. § 3142(f), on October 30, 2000, a hearing was held to determine whether the defendant, **Jermaine Williams**, should be detained prior to trial. Having considered the factors enumerated in 18 U.S.C. § 3142(g), this Court finds that no condition or combination of conditions of release will reasonably ensure either the appearance of this defendant as required or the safety of any other person and the community. Therefore, it is hereby ordered that the defendant, **Jermaine Williams**, be detained prior to trial and until the conclusion thereof.

In accordance with the provisions of 18 U.S.C. § 3142(i), the Court hereby makes the following findings of fact and statement of reasons for the detention:

1. The defendant is charged with obstructing, delaying, and affecting commerce by violence and with conspiracy to do the same, in violation of 18 U.S.C. §§ 371 and 1951. Therefore, the defendant is charged with crimes of violence. 18 U.S.C. § 3142(g)(1).



2. The Court received credible evidence that the defendant committed the offenses with which he has been charged. On or about October 20, 2000, at approximately 6:40 a.m., a Brinks van made a scheduled drop-off of deposits at CitiBank, 2789 University Drive, Coral Springs, Florida. Brinks is a company engaged in interstate commerce by shipping and transporting money throughout the United States. The funds being transported belonged to CitiBank and were insured by the Federal Deposit Insurance Corporation.

In the course of their delivery, two Brinks guards approached the ATM machine with money from their van. They were ambushed from behind by at least two armed men who fired and struck both guards. One of the guards returned fire as the assailants fled in a red vehicle. A citizen heard the shots being fired and observed a red Honda Civic with dark tinted windows fleeing the scene at a high rate of speed.

Approximately thirty minutes later, a red Honda Civic was located a few blocks east of the bank. The vehicle's ignition was on, the car was running, the right rear passenger window was down, and the right front passenger door was ajar. Police recovered from the vehicle a .9mm caliber semi-automatic pistol, a shotgun, and 3 spent 12-gauge shotgun shell casings. Police located an entry mark near the passenger rear door consistent with a bullet entry. And they located blood splatters on the front windshield, both front seats, the steering wheel cover, the driver's door handle, and the carpet on the driver and passenger sides. In addition, police recovered latex gloves in and around the vehicle, and they found a one inch lock of coarse dark black hair on the driver's side dashboard area; the lock of hair was braided into a dred lock style with skin attached to it and a red stain that appeared to be blood. Investigation revealed that the red Honda Civic had been

2

reported stolen in Coral Springs approximately eight days earlier.

At 7:55 a.m., employees of Westside Regional Hospital in Plantation, Florida notified police that a subject, later identified as **Jermaine Williams**, had been dropped off in a black Honda Civic. **Williams** told hospital staff and police that he had been shot by an unknown person earlier that morning as he was urinating on the side of the Sawgrass Expressway. Examination revealed what **Williams** had received a grazing wound to the right side of his head consistent with a gunshot wound. After he received treatment, **Williams** accompanied law enforcement personnel back to the Coral Springs Police Department for further questioning. They observed that Williams' hair appeared to be "dred" in style and was consistent in color, texture, length, and style to the hair sample recovered from the red Honda Civic.

Investigation determined that **Williams** had been arrested by the Coral Springs Police Department on August 28, 2000, for aggravated battery with a firearm. A search of **Williams'** vehicle incident to that arrest revealed two bulletproof vests, handcuffs, and two canisters of chemical mace. **Williams** was accompanied in the vehicle by Lowen Espinueva, who resided in Coral Springs.

Coral Springs police and FBI agents responded to Espinueva's address and initiated a surveillance. They observed a black Honda Civic and a silver Integra in the parking lot in front of the residence. Police had previously learned that **Williams** drove a silver Integra. Soon after the surveillance began, an individual later identified as Lowen Espinueva emerged from behind the residence; he was immediately detained.

The owner of the black Honda Civic was also contacted and identified as Dana

3

Sampson. Sampson stated that she had driven **Williams** to the hospital earlier that morning. According to Sampson, Espinueva had awakened her, and **Williams** had asked her to drive him to a hospital either in Boca Raton or in Plantation, but not in Coral Springs. Sampson reported that Espinueva did not accompany **Williams** into the hospital; he instead remained in her vehicle as **Williams** entered the hospital. Sampson also consented to a search of her apartment. Agents located therein a man's shirt and a latex glove in a trash can; outside her residence, they located another latex glove in a trash can. And they found a red substance, which appeared to be blood, on the front passenger seat of Sampson's vehicle.

Espinueva was transported to the Coral Spring Police Department and interviewed by law enforcement officers. After being advised of and waiving his Miranda rights, Espinueva told police that he had accompanied **Williams** to the hospital with Sampson and that he had cleaned the blood off **Williams**' silver Integra. Espinueva further admitted to stealing the red Honda Civic with **Williams** about a week earlier. **Williams** had reportedly told him that he wanted to get some money. According to Espinueva, **Williams** came to his home that morning (October 20) at approximately 6:00 a.m. and tried to get him to participate in a robbery. Espinueva claims that he (Espinueva) went back to sleep. Espinueva stated that **Williams** then returned, bleeding, after the robbery and said, "I pulled, and I got shot."

Police recovered a latent fingerprint from a latex glove found on the ground outside the red Honda Civic allegedly used in this offense. Laboratory analysis matched the fingerprint on the glove with the known fingerprints of Lowen Espinueva. Investigation also

4

revealed that the firearms recovered from the red Honda Civic had been reported stolen.

After searching **Williams'** silver Integra, police recovered a piece a paper bearing a rough sketch of the banking facility at which the robbery occurred; it also listed times of day that were consistent with the Brink's schedule.

Finally, the Government proffered that Coral Springs Police had encountered **Jermaine Williams** directly behind the CitiBank approximately two weeks prior to the robbery; the encounter occurred at or about the time of day of the Brinks delivery. The Government submits that **Williams** had been casing the premises. 18 U.S.C. § 3142(g)(2).

3.   The pertinent history and characteristics of the defendant are significant to this Court's assessment of his candidacy for bond. **Jermaine Williams** is a Jamaican citizen. He has been residing in the community for the past six years. For the past four months, he has been living with his aunt and uncle; for the previous five and one half years, he lived with his mother.

The Pretrial Services Report reflects that **Jermaine Williams** is the second of two surviving children from the former union of his parents. He has a daughter residing in Coral Springs.

The defendant is currently unemployed. He last worked approximately three months ago performing electrical wiring. Aside from a 1990 vehicle, he reports no assets of significant value.

The Pretrial Services Report reflects that **Jermaine Williams** has been arrested for the following offenses: gun theft (defendant claims arrest was for "auto theft")(1997); and aggravated assault with a firearm (2 counts)/carrying a concealed weapon (2000).

5

According to the Report, the defendant was placed on probation for the gun theft. Further, the defendant was on bond for the aggravated assaults at the time of the instant offense.

Given the significant period of incarceration the defendant would face upon conviction, as well as his foreign citizenship and lack of financial ties to the United States, the undersigned does not believe that he would be likely to appear if released on bond prior to trial.    18 U.S.C. § 3142(g)(3)(A) and (B)

4.    The Government proffered substantial evidence showing that **Jermaine Williams** was involved in a well-planned ambush and shooting of two Brinks guards. Further, **Williams** had been charged only two months earlier with aggravated battery with a firearm and was on bond for that offense at the time of the instant offense. A search of **Williams**' vehicle incident to that earlier arrest revealed two bulletproof vests, handcuffs, and two canisters of chemical mace.   Accordingly, the evidence strongly suggests that **Jermaine Williams** constitutes a danger to the community. 18 U.S.C. § 3142 (g)(4).

5.    The Court specifically finds that there is no condition or combination of conditions of release that reasonably will ensure either the defendant's appearance as required or the safety of any other person and the community.  18 U.S.C. § 3142(e).

Based upon the above findings of fact, which were supported by clear and convincing evidence, the Court has concluded that this defendant presents a risk of flight if released on bond prior to trial and a danger to the community.  The Court hereby directs:

1.    That the defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal;

2. That the defendant be afforded reasonable opportunity for private consultation with counsel; and

3. That, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

DONE AND ORDERED at Fort Lauderdale, Florida this 31st day of October 2000.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

Daryl Wilcox, Esquire
Assistant Federal Public Defender
Attorney for Defendant

Thomas Lanigan, Esquire
Assistant United States Attorney

United States Marshal

United States Pretrial Services

7