UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6312-CR-ROETTGER/Snow

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JERMAINE WILLIAMS, et al

    Defendant.

_____/

## MOTION TO SUPPRESS IN CUSTODY STATEMENTS
## AND REQUEST FOR HEARING

The defendant, JERMAINE WILLIAMS, through counsel, respectfully requests that this Court, pursuant to the Fifth and Sixth Amendments to the United States Constitution and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966), suppress his in custody statements. The following factual background and memorandum of law sets forth the grounds for this motion.

### FACTUAL BACKGROUND

1.     Defendant Williams is charged by indictment with (1) conspiracy to obstruct interstate commerce by robbery in violation of 18 U.S.C. § 1951(b)(1); (2) obstruction of interstate commerce by robbery in violation of U.S.C. § 1951(a) and (3) carrying and using a firearm in relation to a crime of violence in violation of 18 U.S.C. 924(c).

2.     On October 20, 2001, at approximately 6:00 a.m., at least two men attempted to rob two Brinks guards as they were about to make a deposit at the CitiBank located at 2789 University Drive, Coral Springs, Florida.

3.  The two Brinks Guard were shot in the robbery attempt and the robbers fled after one of the guards returned fire.

4.  Approximately thirty minutes after the attempted robbery, police discovered a red Honda Civic, a few blocks east of the bank. Inside the vehicle the police found blood spatters and a one inch piece of hair with skin attached to it.

5.  At approximately 7:55 a.m., employees of the Westside Regional Hospital in Plantation, Florida notified police that the defendant, Jermaine Williams, was dropped off for treatment for a gunshot wound to the right side of his head.

6.  Defendant Williams was met by FBI agents and police officers at the hospital and questioned concerning the attempted robbery.

7.  After Williams was treated at the hospital, FBI agents and Coral Springs Police officers took Mr. Williams to the Coral Springs Police Department for further questioning.

8.  Defendant Williams was interrogated from approximately 10:00 a.m. until 5:00 p.m., totaling approximately seven hours.

9.  Defendant Williams was not properly advised of rights pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436, 475 (1966). Specifically, advising Mr. Williams of his right to remain silent, Coral Springs Police Detective Doug Williams stated verbatim "Should you decide to me, anything you say can maybe used against you in a court of law."

10.  During the investigation, Mr. Williams made several requests to end the interview and several requests to speak with a lawyer. Mr. Williams' requests were repeatedly ignored by the law enforcement officers conducting the interrogation.

A. Defendant Williams first inquired about a lawyer while being read his rights when he asked Detective Williams "is there a reason for me to have a lawyer present." Detective Williams responded, "No, that's your right. Me as a police officer-I have to advise you that you have that opportunity."

B. On tape 2 of the interrogation, Defendant Williams states "couldn't I like go home and get some rest and ya'll like call me up another day and we can do this." Detective Williams responded that "we're not going to be able to do that."

C. Shortly after the preceding statement, Defendant Williams stated, "What if I had a lawyer?" Detective Williams ignores this statement and continues to interrogate.

D. On tape 2 of the interrogation, Defendant Williams's states, "seriously, I think it's time for me to back go home." Detective Williams responds, "you're not going to be able to do that." Defendant Williams replies "I'll get my lawyer to send me home" Detective Williams continues to interrogate.

E. On tape 2 of the interrogation, Defendant Williams again states, "seriously, I think it is time for me top go home..." Detective Williams responds "someone was murdered" and continues to interrogate Mr. Williams.

F. On tape 3 of the interrogation, Defendant Williams states " I realize, I should get a lawyer." Detective Williams ignores this statement and continues to interrogate.

3

> G. On tape 3 of the interrogation the Defendant Williams states "either you're going to arrest me or the lawyer-let me talk to a lawyer." Detective Williams continues to interrogate.
>
> H. On tape 5, Defendant Williams states "you know what, get me a phone so I can get a lawyer." Detective Williams responds by yelling profanities.
>
> I. On tape 5, Defendant Williams states, "I have a lawyer, I can call him." Detective Williams responds that a lawyer can't do you any good .... he may help you in court later on."

11. While Mr. Williams never admitted to the attempted robbery, Mr. Williams did make incriminating statements concerning the robbery attempt.

## MEMORANDUM OF LAW

### Adequacy of Miranda Warnings

Before using statements made by a defendant against him at trial, the government must establish that certain procedural safeguards, including the receipt of Miranda warnings, were employed. Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628 (1966). Miranda requires that prior to interrogation, the accused be advised of his right to remain silent and advised that anything the accused says can and will be used against the accused in court. Miranda, 384 U.S. at 469, 86 S.Ct. 1625. This warning is needed in order to make the accused aware of his Fifth Amendment privilege and the consequences of foregoing the privilege. Id. It is only through the awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege. Id. Although the Supreme Court has held that the police do not have to

4

recite the Miranda warnings in a ritualistic fashion , the warning must not be misleading. California v. Prysock, 435 U.S. 355, 101 S.Ct. 2806 (1981).

In this case, the Detective Williams failed to properly advise Defendant Williams of the consequences of foregoing the Fifth Amendment privilege to remain silent. Detective Williams' warning as to consequences makes no sense and is confusing. The warning is misleading because it suggests that what the defendant says might not be used against him in court. Accordingly, the warnings in this case were constitutionally inadequate. See United States v. Connell, 869 F.2d 1349 (9th Cir. 1989)(warning suggesting that the defendant "might" be appointed an attorney if defendant was too poor to afford one was constitutionally inadequate). Because the warnings were constitutionally inadequate, this Court must order that Defendant Williams' entire statement be suppressed.

## Requests to End Interrogation and Requests to Speak with a Lawyer

The interrogation of an accused must cease when the accused articulates in a clear manner that he wishes the questioning to cease or wishes to consult with a lawyer. See United States v. Davis, 512 U.S. 452, 459, 114 S.Ct. 2350, 2355-56 (1994); United States v. Mikell, 102 F.3d 470, 477 (11th Cir. 1996). A suspect need not speak with discrimination of an Oxford don, he need only articulate his desire to cut off questioning with sufficient clarity that a reasonable police officer would understand the statement to be an assertion of the right to remain silent. Coleman v. Singletary, 30 F.3d 1420, 1424(11th Cir. 1994). The admissibility of statements after a person has decided to remain silent depends under Miranda on whether his right to cut off questioning was scrupulously honored. Michigan v. Mosley, 423 U.S. 96, 104, 96 S.Ct. 321, 326

5

In this case, Defendant Williams statement "couldn't I like go home and get some rest and ya'll like call me up another day and we can do this" is a clear and unequivocal request to cut off questioning. Detective Williams failed to scrupulously honor Defendant William's request to cut off questioning. Instead, Detective Williams told Defendant Williams that he couldn't go home and continued the interrogation. Accordingly, this court should suppressed as evidence in this case all statements made by Defendant Williams after he made the request to end the interrogation.

If this Court finds that Defendant Williams' initial request to end the interrogation was equivocal, Defendant Williams asks this Court to make a finding as to whether he made an unequivocal request to end the interrogation or consult with a lawyer at some other point during the interrogation. Upon such a finding, the defendant would rely upon the argument set forth above and ask this Court to suppress all statements made by Mr. Williams after he unequivocally made a request to end the interrogation or consult with a lawyer.

WHEREFORE, the defendant, Jermaine Williams, respectfully requests this Court hold a hearing and suppress Mr. William's entire statement or alternatively any and all statements made after he invoked his right to remain silent or his right to counsel.

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By: _____
Daryl E. Wilcox
Assistant Federal Public Defender
Florida Bar No. 838845
101 S.E. 3rd Avenue, Suite 202
Fort Lauderdale, Florida 33301

6

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing instrument was mailed this 10th day of January, 2001 to Thomas Lanigan, Assistant United States Attorney, 500 East Broward Boulevard, Suite 700, Fort Lauderdale, Florida 33301 and Barry Wax, Esq., 301 South Biscayne Boulevard, Suite 1950, Miami, Florida 33131,

By: _____
       Daryl E. Wilcox