UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6312-CR-ROETTGER/Snow

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JERMAINE WILLIAMS, et al

    Defendant.

_____/

**NIGHT BOX FILED**
**JAN 10 2002**
CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

## MOTION TO SUPPRESS ALLEGED DIAGRAM OF CRIME SCENE FOUND IN DEFENDANT'S VEHICLE DUE TO INVALID CONSENT TO SEARCH AND REQUEST FOR HEARING

The defendant, JERMAINE WILLIAMS, through counsel, respectfully requests that this Court, pursuant to the Fourth and Fifth and Sixth Amendments to the United States Constitution and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966).

**FACTUAL BACKGROUND**

1. Defendant Williams re-alleges and incorporates by reference all allegations contained in his Motion to Suppress in Custody Statements bearing certificate of service dated January 10, 2002.

2. On October 20, 2001, at approximately 6:00 a.m., at least two men attempted to rob two Brinks guards as they were about to make a deposit at the CitiBank located at 2789 University Drive, Coral Springs, Florida.

3. The two Brinks Guards were shot in the robbery attempt and the robbers fled after one of the guards returned fire.

4. Approximately thirty minutes after the attempted robbery, police discovered a red Honda Civic, a few blocks east of the bank. Inside the vehicle the police found blood splatters and a one inch piece of hair with skin attached to it.

5. At approximately 7:55 a.m., employees of the Westside Regional Hospital in Plantation, Florida notified police that the defendant, Jermaine Williams, was dropped off for treatment for a gunshot wound to the right side of his head.

6. Defendant Williams was met by FBI agents and police officers at the hospital and was questioned concerning the attempted robbery.

7. After Williams was treated at the hospital, FBI agents and Coral Springs Police officers took Mr. Williams to the Coral Springs Police Department for further questioning.

8. Defendant Williams was interrogated from approximately 10:00 a.m. until 5:00 p.m., totaling approximately seven hours.

9. During the investigation, Mr. Williams made several requests to end the interview and several requests to speak with a lawyer. Mr. Williams' requests were repeatedly ignored by the law enforcement officers conducting the interrogation.

    A. Defendant Williams first inquired about a lawyer while being read his rights when he asked Detective Williams "is there a reason for me to have a lawyer present." Detective Williams responded, "No, that's your right. Me as a police officer-I have to advise you that you have that opportunity."

B. On tape 2 of the interrogation, Defendant Williams states "couldn't I like go home and get some rest and ya'll like call me up another day and we can do this." Detective Williams responded that "we're not going to be able to do that."

C. Shortly after the preceding statement, Defendant Williams stated, "What if I had a lawyer?" Detective Williams ignores this statement and continues to interrogate.

D. On tape 2 of the interrogation, Defendant Williams's states, "seriously, I think it's time for me to back go home." Detective Williams responds, "you're not going to be able to do that." Defendant Williams replies "I'll get my lawyer to send me home" Detective Williams continues to interrogate.

E. On tape 2 of the interrogation, Defendant Williams again states, "seriously, I think it is time for me to go home..." Detective Williams responds "someone was murdered" and continues to interrogate Mr. Williams.

F. On tape 3 of the interrogation, Defendant Williams states "I realize, I should get a lawyer." Detective Williams ignores this statement and continues to interrogate.

G. On tape 3 of the interrogation the Defendant Williams states "either you're going to arrest me or the lawyer-let me talk to a lawyer." Detective Williams continues to interrogate.

H. On tape 5, Defendant Williams states "you know what, get me a phone so I can get a lawyer." Detective Williams responds by yelling profanities.

3

   I. On tape 5, Defendant Williams states, "I have a lawyer, I can call him." Detective Williams responds that a lawyer can't do you any good .... he may help you in court later on."

10. After ignoring Mr. Williams' requests for counsel and his requests to end the interview, the investigating officers had Mr. Williams to sign a consent form to search his vehicle.

11. Mr. Williams signed the consent to search form at approximately 4:30 p.m., approximately six and one-half hours of interrogation.

12. A subsequent search of Mr. Williams' vehicle uncovered a document which the government purports to be a diagram of the crime scene.

13. Mr. Williams is requesting the Court to suppress the alleged diagram of the crime scene because the consent was obtained after he invoked his right to counsel and was otherwise involuntary under the totality of circumstances.

## MEMORANDUM OF LAW

Whether an individual's consent to a warrantless search was given voluntarily is a question of fact that must be decided in light of the totality of the circumstances. The government bears the burden of proving that the consent was not a function of acquiescence to a claim of lawful authority, but was given freely and voluntarily. Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319 (1983); United States v. Tovar-Rico, 61 F.3d 1529 (11th Cir. 1995).

The Eleventh Circuit Court of Appeals has not decided whether the failure to cut off questioning after a suspect invokes his right to counsel would taint a defendant's subsequent consent to search. See Tukes v. Dugger, 911 F.2d 508, 514-15 (11th Cir. 1990)(defendants claim that consent was invalid because it violated his right to have all questioning cease once he requested an attorney

.

rejected because the court found that the defendant was not in custody when consent obtained). In addition, the undersigned has not found any Supreme Court decision which directly addresses this issue. However, Mr. Williams submits that the alleged diagram of the crime scene should be suppressed pursuant to Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880 (1980).

In Edwards, the Supreme Court held that once an accused expresses his desire to deal with police only through counsel, he is not be subjected to any further interrogation until counsel has been made available to him. 451 U.S. at 484-85, 101 S.Ct. at 1885. In this case, the investigating officers asked Mr. Williams to give consent to the search of his vehicle well after Mr. Williams had invoked his right to counsel. Accordingly, the request for consent was in violation of Edwards and the purported diagram should be deemed inadmissible as evidence in this case. See United States v. Yan, 704 F. Supp. 1207, 1211 (S.D.N.Y. 1989) (consent to search obtained in violation of Fifth Amendment rights when agents disregarded defendant's request for counsel).

Alternatively, this Court should find that Mr. Williams' consent was involuntary under the totality of circumstances. By the time Mr. Williams gave consent to search his vehicle he had been interrogated in excess of six hours and his requests for counsel had been ignored by the interrogating officers. Mr. Williams respectfully submits that the combination of these two factors and the overbearing manner in which the interrogation was conducted makes the consent to search his car involuntary, and thus invalid.

WHEREFORE, the defendant, Jermaine Williams, respectfully requests this Court hold a hearing and suppress the alleged diagram of the crime scene found in Mr. Williams' vehicle.

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By: _____
Daryl E. Wilcox
Assistant Federal Public Defender
Florida Bar No. 838845
One East Broward Blvd., Suite 1100
Fort Lauderdale, Florida 33301

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing instrument was mailed this 10th day of January, 2002 to Thomas Lanigan, Assistant United States Attorney, 500 East Broward Boulevard, Suite 700, Fort Lauderdale, Florida 33301 and Barry Wax, Esq., 301 South Biscayne Boulevard, Suite 1950, Miami, Florida 33131,

By: _____
Daryl E. Wilcox