tpl:MMP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6197-CR-ROETTGER
*6312*
MAGISTRATE JUDGE SNOW

NIGHT BOX
FILED

JAN 11 2002

CLARENCE ~ ~~~~X
CLERK USDC/SDFL/FTL

UNITED STATES OF AMERICA,      )
                               )
                               )
            Plaintiff,         )
                               )
v.                             )
                               )
JERMAINE WILLIAMS,             )
                               )
            Defendant.         )
_____/

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS ALLEGED DIAGRAM OF CRIME SCENE FOUND IN DEFENDANT'S VEHICLE DUE TO INVALID CONSENT TO SEARCH

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney and files this Response In Opposition To Defendant's Motion and in support thereof states as follows:

### BACKGROUND

1.      On October 20, 2000, at approximately 6:40 am, two Brinks armored car drivers, EISHAM RUIZ and FRANK GRANJA  arrived at the Citibank Automatic teller machine (ATM) in the parking lot located at  2789  University Drive  in Coral Springs, Fl.  As the guards  were  entering  the  ATM  to supply  the  machine  with  money



belonging to Citibank, Inc. they were ambushed by two males.  The men drove up in a red Honda and armed with  a 12 guage shotgun and a 9mm semiautomatic pistol shot without warning from the car.  The shotgun blasts severely injured the guards  in the back and neck area and knocked them to the ground.  RUIZ , one of the guards, although seriously injured, was able to return fire.   RUIZ fired his service  revolver 6 times in the direction of  the red Honda. After being shot at by the guard,  the robbers panicked and sped away without obtaining any money.

2.   Both of the guards saw the robbers flee the scene of the assault in a red automobile.  The guards did not know the number of robbers involved.

3.   One witness, who lives in the immediate area, reported that as he was preparing to go to work, he heard what he believed were three gunshots coming from the vicinity of the Citibank.  This same  witness  then  observed  a  red  Honda  Civic  with  dark  tinted windows fleeing from the bank and traveling east on NW 28th Street. Another  Citizen  saw  the  guards  lying  on  the  bank  parking  lot pavement.  There are recorded 911  Calls from these witnesses.

4.  At Approximately 7:00 am, a Coral Springs Police Officer located a Red 1983 Honda Civic, two blocks west from the shooting scene. Investigation determined that it was the vehicle used during the commission of the robbery,  The car was left with the motor running and the doors ajar.   Investigation determined that the car

had been stolen in Coral Springs, Fl  on October 12, 2000.   The
vehicle had numerous blood stains  and blood splatters throughout
the vehicle.   Located on the dashboard was what appeared to be a
"dred" lock piece of black human hair braid with blood and skin
attached  laying on the dash board of the vehicle near the vin
number.   Also recovered from the vehicle were a Mossberg 12 gauge
shot gun  loaded with three live shells;  three spent shells were
found in the back seat  and a 9mm semiautomatic pistol loaded  with
eight rounds with one round in the chamber.  A spent 9mm shell were
found on the ground at the scene of the shooting.

5. At approximately 7:55 am Westside Hospital Plantation, FL
contacted the police and advised that they had a black male patient
for treatment of a gunshot wound to the head. Witnesses advised
that the man had been dropped off by a white female driving a black
Honda  The police arrived at the hospital and interviewed the
patient, JERMAINE WILLIAMS, who advised that he had been driving on
the SawGrass expressway that morning  when he pulled over to the
side of the road to urinate.  WILLIAMS further advised that shortly
after exiting his car  he felt a hot burning sensation on his head
area and realized that he must have been shot.  William advised the
hospital personnel that he  drove to the hospital for treatment.

6.  Coral Springs P.D. officers  upon learning that WILLIAMS
had been involved in a shooting recalled  that WILLIAMS  and an

associate, Williams and ESPINUEVA,  had been arrested by the Coral

Springs Police Department on August 28, 2000 for aggravated Battery

with a firearm when WILLIAMS  pointed a pistol at an individual.

A search of WILLIAMS' vehicle incident to arrest that day  produced

two bullet proof vests, two pairs of  handcuffs and two canisters

of mace.

7. A check of the Coral Springs Police Department field

inquiry records showed that on Friday, October 6, 2000 at 6:30 a.m.

exactly  two week before the armored car robbery,  Williams was

stopped by a Coral Spring Police Patrol Officer in the 2700 block

of  NW 92nd Avenue.  Williams, was dressed in all black clothing,

and advised the officer that he was walking from his girlfriend's

Nikki Jones' house located at 9500 block of 29th Street, to his

friend Lowen's  house at the Royal Palm Towers.  The address where

Williams was stopped by the police  is located directly behind the

Citibank,  2789  University  Drive,  Coral  springs,  Florida.

Investigation determined that  ESPINUEVA  does not live at the

Royal Palm Towers.  He lives at 11401 NW 43rd Street.

8. Coral Springs Police Report # 00-12479, revealed that

the pistol, which is described as a German made 9mm Makarov, serial

number F8539 was reported stolen  on October 2, 2000, from a

vehicle parked  at 11315 NW 44th Street, a few blocks away from

ESPINUEVA's residence.  this pistol was stolen during a vehicle

burglary.  The Shotgun was reported stolen in a home invasion along with $6,000 in cash on July 2, 2000 in Margate, FL. Investigation disclosed that the victim in the home invasion robbery was a Nevin Graff, an acquaintance of  ESPINUEVA.

9. ESPINUEVA and WILLIAMS hid the vehicle in the Royal Palm Towers apartment complex. This is the same complex where WILLIAMS claimed ESPINUEVA resided when WILLIAMS was stopped and interviewed by the CSPD on October 6, 2001.   ESPINUEVA'S fingerprints were recovered from the shotgun used to shoot the guards.   While inventorying the clothing, a Coral Springs Crime Scene Technician discovered a handcuff key in one of pockets of WILLIAMS' pants.

10.   Additionally, the bloody dred lock  found on the dash board in the red Honda matched the color, texture, length and style of the dred locks worn by WILLIAMS.

11. WILLIAMS' Silver Integra was  towed to the FBI, Miami Field Division and secured.   The FBI Evidence Response Team conducted a search of WILLIAMS' silver Integra.  Investigating personnel discovered an envelope in a driver's door compartment containing a rough sketch of the Citibank  banking facility and a Brink's truck.  The words "Brinks", "ATM", "Drive thru teller" and "walk up ATM" all appear on this document.  Moreover, the times 7:25 a.m., 7:28 a.m., and 7:30 a.m. are also handwritten on this document.  WILLIAMS' fingerprints were found on this diagram.  In

addition to collecting this item of evidence, ERT also collected numerous swabs of suspected blood evidence and a bottle of Simple Green cleaning solution, which ESPINUEVA had earlier admitted to using to clean the blood stains from the Honda Integra.

12. Nuclear DNA analysis of the blood recovered from the door handle, headliner and other areas of the stolen red Honda used as a getaway car as well as blood recovered from William's Honda was compared with a known blood sample obtained from WILLIAMS. Nuclear DNA comparison indicates that all the blood recovered was that of WILLIAMS.

13. Charles A. Peters, an FBI firearm experts will testify that compositional steel shot analysis conducted on the shot gun pellets recovered from the bodies of RUIZ and GRANJA and the ATM area compared with the live shotgun shells found in the shot gun recovered in the red Honda indicate that they are consistent with coming from the same source.

14. Shot pattern analysis conducted by FBI examiner Douglas P. Murphy indicated that the firing distance of the shotgun was greater than 5 feet but less than 15 feet.

## MOTION TO SUPPRESS

The defendant now moves this court to suppress a crime scene diagram found in the defendant's car pursuant to a consent search.

## MEMORANDUM OF LAW

The defendant seeks to suppress the valid consent to search his vehicle because of an alleged Miranda violation.      The defendant details the same alleged Miranda violation in this motion to suppress a document that he uses in an attempt to suppress Statements. The government does not concede any Miranda violation has occurred that would vitiate the consent, but assuming arguiendo that there was one, it would be of no moment in the Miranda analysis as it pertains to a consent to search.

The record is clear that the defendant signed a consent to search form while he was being interviewed at the Coral Springs Police Department on October 20, 2000.  See consent to search form attached as government's exhibit 1.

In his motion, the defendant admits that there is no Eleventh Circuit authority that any alleged violation of Miranda will taint a defendant's subsequent to search and cites an obscure fed supp case. See defendant's motion at pg 5.  It is well settled that the Miranda rights are designed to ensure that individuals being subjected to custodial interrogation are accorded their constitutional privilege against compulsory self incrimination. See United States v. Hidalgo, 7 F.3d 1566 (1993).   The government seeks to introduce the crime scene diagram found pursuant to a

consent to search. There is nothing testimonial or communicative here that Miranda seeks to protect. This court will have to make credibility choices based on the totality of the circumstances.

Wherefore, based on the above, it is respectfully submitted that this Honorable court deny the Defendant's motion to suppress evidence.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: _____
THOMAS P. LANIGAN
Assistant United States Attorney
Florida Bar #A550003
U.S. Courthouse/Federal Building
500 E. Broward Boulevard
Fort Lauderdale, Florida 33301
(954) 356-7255 ext. 3590

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to the below named on this/_____. day of January, 2002.

Darryl Wilcox,AFPD
1 East Broward blvd.
Fort Lauderdale, FL
33301

_____
THOMAS P. LANIGAN
ASSISTANT UNITED STATES ATTORNEY

# CORAL SPRINGS POLICE DEPARTMENT
2801 Coral Springs Drive
Coral Springs, Florida 33065

## AUTHORIZATION STATEMENT
## VEHICLE

GOVERNMENT
EXHIBIT

CASE
NO. 00-6312-Cr-NCR

EXHIBIT
NO. 1

CASE #: 00-13181                    DATE/TIME: 10-20-00  2:50nm

LOCATION: _____

I, Jermaine Williams   address 3941 NW 55 Ter Lauderdale
phone number: _____, do hereby authorize the Coral Springs Police Department
and the duly appointed police officers of that agency to make a thorough search of the below described
vehicle. By my signature below, written by my own hand, I hereby authorize these officers an give my
permission to confiscate any contraband and any object they suspect of being contraband found within
said vehicle. I do hereby release the above agency and it's duly appointed police officers from any and
a" bilities and/or claims made by me or my heirs relating to the aforementioned search and seizure.
1... authorization I give voluntarily to the Coral Springs Police Department with no promise of
compromise of favor by said agency.

Description of said vehicle:

Color: Gray          Year: 1992

Make: Acura          Model: Integra      Body Style: 2D

Registration # 150l75cl     Year: Oct. 2000      State: FL

Owner: Jermaine Williams     VIN #: JH4 DA9341L5017267

Signed: _____

Date: 10-20-00

4:30pm

Witness: _____

ess: B Scott Umphlet

CSPD#393 (8/16/93)