tpl:TPL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6312-CR-ROETTGER
MAGISTRATE JUDGE SNOW

UNITED STATES OF AMERICA,         )
                                  )
            Plaintiff,            )
                                  )
v.                                )
                                  )
JERMAINE WILLIAMS,                )
                                  )
            Defendant.            )
_____/

NIGHT BOX
FILED
JAN 11 2002
CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATING TO
DEFENDANT'S ARREST FOR AGGRAVATED ASSAULT AND DEFENDANT'S ALLEGED
<u>PARTICIPATION IN UNRELATED ROBBERIES</u>**

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney and files this Response In Opposition To Defendant's Motions and in support thereof states as follows:

<u>BACKGROUND</u>

1.   On October 20, 2000, at approximately 6:40 am, two Brinks armored car drivers, EISHAM RUIZ and FRANK GRANJA arrived at the Citibank Automatic teller machine (ATM) in the parking lot located at 2789 University Drive in Coral Springs, Fl. As the guards were entering the ATM to supply the machine with money



belonging to Citibank, Inc. they were ambushed by two males. The men drove up in a red Honda and armed with a 12 guage shotgun and a 9mm semiautomatic pistol shot without warning from the car. The shotgun blasts severely injured the guards in the back and neck area and knocked them to the ground. RUIZ , one of the guards, although seriously injured, was able to return fire. RUIZ fired his service revolver 6 times in the direction of the red Honda. After being shot at by the guard, the robbers panicked and sped away without obtaining any money.

2. Both of the guards saw the robbers flee the scene of the assault in a red automobile. The guards did not know the number of robbers involved.

3. One witness, who lives in the immediate area, reported that as he was preparing to go to work, he heard what he believed were three gunshots coming from the vicinity of the Citibank. This same witness then observed a red Honda Civic with dark tinted windows fleeing from the bank and traveling east on NW 28th Street. Another Citizen saw the guards lying on the bank parking lot pavement. There are recorded 911 Calls from these witnesses.

4. At Approximately 7:00 am, a Coral Springs Police Officer located a Red 1983 Honda Civic, two blocks west from the shooting scene. Investigation determined that it was the vehicle used during the commission of the robbery, The car was left with the motor running and the doors ajar. Investigation determined that the car

had been stolen in Coral Springs, Fl on October 12, 2000. The vehicle had numerous blood stains and blood splatters throughout the vehicle. Located on the dashboard was what appeared to be a "dred" lock piece of black human hair braid with blood and skin attached laying on the dash board of the vehicle near the vin number. Also recovered from the vehicle were a Mossberg 12 gauge shot gun loaded with three live shells; three spent shells were found in the back seat and a 9mm semiautomatic pistol loaded with eight rounds with one round in the chamber. A spent 9mm shell were found on the ground at the scene of the shooting.

    5. At approximately 7:55 am Westside Hospital Plantation, FL contacted the police and advised that they had a black male patient for treatment of a gunshot wound to the head. Witnesses advised that the man had been dropped off by a white female driving a black Honda The police arrived at the hospital and interviewed the patient, JERMAINE WILLIAMS, who advised that he had been driving on the Saw Grass expressway that morning when he pulled over to the side of the road to urinate. WILLIAMS further advised that shortly after exiting his car he felt a hot burning sensation on his head area and realized that he must have been shot. William advised the hospital personnel that he drove to the hospital for treatment.

    6. Coral Springs P.D. officers upon learning that WILLIAMS had been involved in a shooting recalled that WILLIAMS and an

associate, LOWEN ESPINUEVA, had been arrested by the Coral Springs Police Department on August 28, 2000 for aggravated Battery with a firearm when WILLIAMS pointed a pistol at an individual. A search of WILLIAMS' vehicle incident to arrest that day produced two bullet proof vests, two pairs of handcuffs and two canisters of mace.

7. A check of the Coral Springs Police Department field inquiry records showed that on Friday, October 6, 2000 at 6:30 a.m. exactly two week before the armored car robbery, Williams was stopped by a Coral Spring Police Patrol Officer in the 2700 block of NW 92nd Avenue. Williams, was dressed in all black clothing, and advised the officer that he was walking from his girlfriend's Nikki Jones' house located at 9500 block of 29th Street, to his friend Lowen's house at the Royal Palm Towers. The address where Williams was stopped by the police is located directly behind the Citibank, 2789 University Drive, Coral springs, Florida. Investigation determined that ESPINUEVA does not live at the Royal Palm Towers. He lives at 11401 NW 43rd Street.

8. Coral Springs Police Report # 00-12479, revealed that the pistol, which is described as a German made 9mm Makarov, serial number F8539 was reported stolen on October 2, 2000, from a vehicle parked at 11315 NW 44th Street, a few blocks away from ESPINUEVA's residence. The Mossberg shotgun was reported stolen

in a home invasion along with $6,000 in cash on July 2, 2000 in Margate, FL. Investigation disclosed that the victim in the home invasion robbery was a Nevin Graff, an acquaintance of ESPINUEVA.

9. ESPINUEVA and WILLIAMS hid the vehicle in the Royal Palm Towers apartment complex. This is the same complex where WILLIAMS claimed ESPINUEVA resided when WILLIAMS was stopped and interviewed by the CSPD on October 6, 2001. ESPINUEVA'S fingerprints were recovered from the shotgun used to shoot the guards. While inventorying the clothing, a Coral Springs Crime Scene Technician discovered a handcuff key in one of pockets of WILLIAMS' pants.

10. Additionally, the bloody dred lock found on the dash board in the red Honda matched the color, texture, length and style of the dred locks worn by WILLIAMS.

11. WILLIAMS' silver Integra was towed to the FBI, Miami Field Division and secured. The FBI Evidence Response Team conducted a search of WILLIAMS' silver Integra. Investigating personnel discovered an envelope in a driver's door compartment containing a rough sketch of the Citibank banking facility and a Brink's truck. The words "Brinks", "ATM", "Drive thru teller" and "walk up ATM" all appear on this document. Moreover, the times 7:25 a.m., 7:28 a.m., and 7:30 a.m. are also handwritten on this document. WILLIAMS' fingerprints were found on this diagram. In addition to collecting this item of evidence, ERT also collected

numerous swabs of suspected blood evidence and a bottle of Simple Green cleaning solution, which ESPINUEVA had earlier admitted to using to clean the blood stains from the Honda Integra.

12. Nuclear DNA analysis of the blood recovered from the door handle, headliner and other areas of the stolen red Honda used as a getaway car as well as blood recovered from William's Honda was compared with a known blood sample obtained from WILLIAMS. Nuclear DNA comparison indicates that all the blood recovered was that of WILLIAMS.

13. Charles A. Peters, an FBI firearm experts will testify that compositional steel shot analysis conducted on the shot gun pellets recovered from the bodies of RUIZ and GRANJA nand the ATM area compared with the live shotgun shells found in the shot gun recovered in the red Honda indicate that they are consistent with coming from the same source.

14. Shot pattern analysis conducted by FBI examiner Douglas P. Murphy indicated that the firing distance of the shotgun was greater than 5 feet but less than 15 feet.

## MOTIONS IN LIMINE

The defendant now moves this court for two orders *in limine* precluding the government from eliciting testimony or introducing evidence relating to defendant's Williams' prior arrest for

aggravated assault and items seized in connection with that arrest as well as Williams' alleged participation in two additional robberies.

## MEMORANDUM OF LAW

The defendant was arrested on August 28, 2000, for aggravated assault in Coral Springs, Florida. While driving, the defendant encountered one Mark Osho, who is now married to a former girlfriend of the defendant. The defendant pointed a hand gun at Osho and Luis Baez, a passenger in Osho's car. After the assault Osho flagged down a passing police car who stopped the defendant. The defendant was driving the vehicle and Lowen Espinueva, his codefendant is this case was the passenger.

Pursuant to a traffic stop of the vehicle, police recovered a Browning 380 handgun under the driver's side seat. After the defendant was placed under arrest an inventory search of his vehicle produced a large canvas bag containing two bullet proof vests, two 3 ounce canisters of pepper spray marked "For law enforcement use only", one set of peerless handcuffs with a key and two screwdrivers. Espinueve, the passenger was Mirandized, waived his rights and advised that he had bought the items for protection so that he could rob drug dealers. Espinueva further admitted that he had previously robbed a drug dealer.

On July 2, 2000, Nevin Graff of Margate, Florida was the victim of a home invasion when two armed and masked men forced there way into his apartment. One of the men spoke with a Jamacian or Carribean island accent. The robbers herded Graff and two guests into the kitchen area where he secured their hands and feet with duct tape. The other robber who did not speak, searched the apartment. Taken were a Mossberg shotgun later determined to be the weapon used to shoot the guards in this case, $6,000 in cash and three pounds of marijuana.

On July 29, 2000, the Checkers restaurant located at 9900 Sample road Coral springs, Fl was robbed by two armed men. The men rushed the back door when an employee was taking the garbage out. The men were described by witness as being a black male and a Hispanic male.

Codefendant Lowen Espinueva recently signed a plea agreement where he pled guilty to the indictment in this case and pursuant to the terms of the plea agreement began to cooperate in this case. Espinueva, who was a drug customer of Nevin Graff, admitted that he committed the armed robbery of Graff's apartment in Margate on July 2, 2000. Espinueva further detailed that Williams accompanied him on the robbery and that they took a Mossberg shotgun, which he admitted was the weapon used to shoot the guards in this case, $6,000 in cash and three pounds of marijuana. This directly

refutes the defendant's assertions that the robberies are unrelated to the charged conduct.

Espinueva further detailed his role in the armed robbery of the Checkers restaurant in Coral Springs, Fl. as well as his participation in Williams' aggravated assault of Osho and Baez detailed above.

Espinueva will be testifying for the government in this matter and the government needs to show the close association between Williams and Espinueva as evidence by their recent crime spree in Coral Springs, Fl. The government wishes to present this evidence to establish Williams' identity as the perpetrator in the armored car robbery charged in the indictment. This evidence and testimony is relevant and contains the requisite similarity of time, location, participants, facts and other *modus operandi*.

It is well settled that the defendant's not guilty plea places in issue "intent" and, therefore - unless a defense stipulation clearly obviates the need for the Rule 404(b) evidence - such evidence should be admitted. See United States v. Butler, 102F.3d1191, 1195-96 (11th Cir.), cert. denied, 117 S. Ct. 1712 (1997) (staging that "[i]ntent is always at issue when a defendant pleads not guilty to a conspiracy charge"); United States v. Thomas, 58 F.3d 1318, 1322 (8th Cir. 1995) ("When a defendant raises the issue of mental state, whether by a mere presence defense that

specifically challenges the mental element of the Government's case or by means of a general denial that forces the Government to prove every element of its case, [Rule 404(b)] evidence is admissible because mental state is a material issue."); United States v. Hardwell, 80 F.3d 1471, 1489 (10th Cir. 1996), reversed on other grounds, 88 F.3d 897 (10th Cir. 1996) ("Evidence of prior drug distribution was relevant to show [that] their presence at the motel was not innocent, and that they intended to distribute cocaine." (Citation omitted)).

A defense representation that they do not intend to contest a certain element of the offense charged - such as the intent element - does not necessarily preclude admission of 404(b) evidence as to that element. See United States v. Huff, 959 F.2d 731, 737 (8th Cir. 1992) (upholding, under Rule 404(b), the trial court's admission of evidence of defendant's prior narcotics trafficking and stating: "Although the defendant in Norton asserted that evidence of his intent was irrelevant because his only defense was coercion, we noted that the Government is not limited in its proof of its case by a defendant's representations of what his defense will be after the Government rests." (Internal quotation and citation omitted)); see also United States v. Thomas, 58 F.3d 1318, 1322 (8th Cir. 1995) ("Rule 404(b) requires exclusion of [prior bad acts evidence] only if the defendant expresses with sufficient

clarity to require a clear and unequivocal decision (e.g., a stipulation) that if the criminal act is proven, the necessary state of mind may be inferred.")

Although the government has detailed a rule 404(b) analysis above, the evidence it seeks to introduce is really inextricably intertwined with the charged conduct.  It is well settled that evidence that forms an integral and natural part of the witness' account of the circumstances surrounding the offense for which the defendant was indicted is admissible even if it tends to reflect negatively on the defendant's character. <u>United States v. Foster</u>, 889 F.2d 1049 (11th Cir. 1989) at 1053; <u>United States v. Costa</u>, 691 F.2d 1358 (11th Cir. 1982).  The defendant's, without warning while armed, would rush the victims, take controll and then rob them. The defendants were close associates who trusted each other to participate in a very dangerous business.

Wherefore, based on the above, it is respectfully submitted that this Honorable court deny the Defendant's motions *in limine*.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: _____
THOMAS P. LANIGAN
Assistant United States Attorney
Florida Bar #A550003
U.S. Courthouse/Federal Building
500 E. Broward Boulevard
Fort Lauderdale, Florida 33301
(954) 356-7255 ext. 3590

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to the below named on this 14th day of January, 2002.

Darryl Wilcox, AFPD
1 East Broward blvd.
Fort Lauderdale, FL
33301

_____
THOMAS P. LANIGAN
ASSISTANT UNITED STATES ATTORNEY

12