# United States Court of Appeals

Eleventh Circuit

56 Forsyth Street, N.W.
Atlanta, Georgia  30303

**Thomas K. Kahn**
Clerk

In Replying Give Number
Of Case And Names of Parties

October 09, 2003



Clarence  Maddox
Clerk, U.S. District Court
299 E. Broward Blvd
Fort Lauderdale  FL  33301

RE: 02-12234-CC       USA v. Jermaine C. Williams
DC DKT NO.:  00-06312 CR-NCR

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued
as the mandate of this court.

Also enclosed are the following:
    Original Exhibits, consisting of: one psi
    Original record on appeal or review, consisting of: four volumes

The district court clerk is requested to acknowledge receipt on the copy of this letter enclosed
to the clerk.

A copy of this letter and the judgment form, but not a copy of the court's opinion or Rule 36-1
decision, is also being mailed to counsel and pro se parties. A copy of the court's opinion
or Rule 36-1 decision was previously mailed to counsel and pro se parties on the date it was issued.

                    Sincerely,

                    THOMAS K. KAHN, Clerk

                    Reply To: James Delaney (404) 335-6113

Encl.

MDT-1 (8-2002)

# United States Court of Appeals

## For the Eleventh Circuit

No. 02-12234

District Court Docket No.
00-06312-CR-NCR

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Aug 5, 2003

THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERMAINE C. WILLIAMS,
a.k.a. Jermaine Williams,

Defendant-Appellant.



FILED by _____ D.C.

OCT 1 4 2003

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

A True Copy - Attested:
Clerk, U.S. Court of Appeals
Eleventh Circuit

By_____
Deputy Clerk
Atlanta, Georgia

---------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Florida
---------------------------------------------------------

JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
OCT 0 9 2003
U.S. COURT OF APPEALS
ATLANTA, GA.

Entered:      August 5, 2003
For the Court:  Thomas K. Kahn, Clerk
By:      Gilman, Nancy

CORRECTED

**UNITED STATES of America,**
Respondent–Appellee,

v.

**Jermaine C. WILLIAMS, a.k.a. Jermaine Williams, Petitioner–Appellant.**

No. 02–12234.

United States Court of Appeals,
Eleventh Circuit.

Aug. 5, 2003.

Defendant was convicted, in the United States District Court for the Southern District of Florida, No. 00-06312-CR-NCR, Norman C. Roettger, Jr., J., of conspiring and attempting to obstruct interstate commerce through robbery. On appeal of sentence, the Court of Appeals, Tjoflat, Circuit Judge, held that convictions should have been grouped together for sentencing purposes.

Vacated and remanded.

**1. Criminal Law ⬩1139, 1158(1)**

Deference due when appellate court reviews trial court's application of sentencing guidelines depends on nature of question presented; questions of legal interpretation are subject to *de novo* review, while primarily factual determinations are reviewed for clear error. 18 U.S.C.A. § 3742(e).

**2. Criminal Law ⬩1023(11), 1147**

Sentencing court's decision to upwardly depart from guidelines is reviewed for abuse of discretion, but its refusal to depart downward is reviewable only to determine wheth-

\* Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit, sitting by

er court erroneously believed it did not have discretionary authority to do so.

**3. Criminal Law ⬩1139**

Question of whether sentencing court correctly grouped charges is reviewed *de novo*. U.S.S.G. § 3D1.2, 18 U.S.C.A.

**4. Sentencing and Punishment ⬩774**

Convictions for conspiring to rob armored car and for attempting to rob same armored car should have been grouped together, for sentencing purposes, though separate in time, offenses were part of same common plan or scheme and equally caused harm to victims. U.S.S.G. § 3D1.2(b), 18 U.S.C.A.

**5. Sentencing and Punishment ⬩776**

Where multiple offenses, such as conspiracy to commit crime and crime itself, equally harm multiple people, sentencing guideline comment requiring identification of most seriously affected person as victim does not force court to designate "one real victim" for each offense; rather, comment merely emphasizes that "secondary victims," such as bystanders who may be traumatized at sight of crime, should not be counted as victims when grouping offenses. U.S.S.G. § 3D1.2, comment. (n. 2), 18 U.S.C.A.

---

Appeal from the United States District Court Southern District of Florida.

Before TJOFLAT, ANDERSON and CUDAHY\*, Circuit Judges.

designation.

Synopsis, Headnotes and Key Number Classification
COPYRIGHT © 2003 by West, a Thomson business

The Synopsis, Headnotes and Key Number Classification constitute no part of the opinion of the court.

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

AUG 5 2003

THOMAS K. KAHN
CLERK

FILED by _____ D.C.

OCT 1 4 2003

CLERK U.S. DIST. CT.
S.D. OF FLA.

3432                          U.S. v. WILLIAMS

TJOFLAT, Circuit Judge:

## I. STATEMENT OF THE CASE

### A. *Factual Background*

On October 20, 2000, Jermaine Williams and Lowen Espinueva attempted to rob an armored car in Coral Springs, Florida. As the armored car's drivers (Frank Granja and Eshaman Ruiz) were restocking an ATM with cash, Williams and Espinueva drove up and started shooting at them. Espinueva used a 12-gauge shotgun, while Williams was firing a 9-millimeter pistol; both guards were seriously wounded. When the guards returned fire, Williams and Espinueva fled without stealing any money.

Williams and Espinueva were later arrested and indicted on three counts: conspiring to obstruct interstate commerce through robbery (Count I),[1] attempting to obstruct interstate commerce through robbery (Count II),[2] and discharging a firearm in connection with a crime of violence (Count III).[3] Williams pled guilty to all three counts and was sentenced to 200 months in prison by the United States District Court for the Southern District of Florida.[4] This includes 80 months for

Counts I and II, and a mandatory consecutive 120-month sentence for Count III.[5] This appeal concerns Williams's prison sentence for Counts I and II.

### B. *Williams's Sentence*

Under the sentencing guidelines, the various charges of which a defendant is convicted are sorted into different "groups" based on the rules set forth in United States Sentencing Commission, *Guidelines Manual*, § 3D (Nov.2002). In general, related charges are supposed to be grouped together, while charges arising from separate incidents are supposed to be grouped apart from each other. "In essence, counts that are grouped together are treated as constituting a single offense for purposes of the guidelines." *Id.*, ch. 3, pt. D, introductory cmt. (2002). Each group is assigned a numerical "offense level," which is determined by the most serious offense in that group. *See id.* § 3D1.3(a). Based on the number of groups the defendant has, as well as each group's offense level, the defendant is assigned a "combined offense level," which is used to determine his sentence. *See id.* § 3D1.4. As a result of this system, a defendant will receive a much

---

1. Federal law provides,

   Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts *or conspires so to do*, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

   18 U.S.C. § 1951(a) (1994) (emphasis added). The statute defines robbery as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession...." *Id.* § 1951(b)(1).

2. *Id.* § 1951(a) (establishing penalties for "[w]hoever ... attempts ... [to] obstruct[ ], delay[ ], or affect[ ] commerce or the movement of any article or commodity in commerce, by robbery or extortion").

3. Federal law provides, "[A]ny person who, during and in relation to any [federal] crime of violence ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence ... if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years." *Id.* § 924(c)(1)(A)(iii) (1994).

4. The court also imposed a $300 special assessment against Williams, and ordered restitution of $404,080.29.

5. *See supra* note 3.

higher sen
separately
er.[6] Secti
lines state
grouped to
the same v
tion," U.S.
involve the
or transac
inal object
mon schem

The Pr
("PSI") co
officer rec
assessed
rather tha
claimed, "
separate h
from grou
One will r
Granja ar
harm cau
filed an
"Counts t
which cha
bery and
are part
should be
§ 3D1.2(b
clined to
emphasizi
grouped t
neither c

6. If two
each gro
individu
conjunct
defenda
bined of
than any

If, in
together
based o
tains. T

and a mandatory consecu-
sentence for Count III.[3]
erns Williams's prison sen-
I and II.

lliams's Sentence

tencing guidelines, the vari-
lich a defendant is convicted
lifferent "groups" based on
h in United States Sentenc-
*Guidelines Manual*, § 3D
:eneral, related charges are
grouped together, while
rom separate incidents are
grouped apart from each
:e, counts that are grouped
ted as constituting a single
ses of the guidelines." *Id.*,
ductory cmt. (2002). Each
a numerical "offense level,"
ined by the most serious
:roup. *See id.* § 3D1.3(a).
nber of groups the defen-
l as each group's offense
nt is assigned a "combined
ch is used to determine his
. § 3D1.4. As a result of
endant will receive a much

---

tablishing penalties for "[w]ho-
... [to] obstruct[ ], delay[ ], or
:r or the movement of any arti-
in commerce, by robbery or

---

/ides, "[A]ny person who, dur-
on to any [federal] crime of
: carries a firearm, or who, in
: such crime, possesses a fire-
tion to the punishment provid-
of violence ... if the firearm is
:tenced to a term of imprison-
ess than 10 years." *Id.*
1994).

---

nposed a $300 special assess-
:ms, and ordered restitution of

---

higher sentence if two crimes are grouped
separately than if they are grouped togeth-
er.[6] Section 3D1.2 of the Sentencing Guide-
lines states that multiple offenses may be
grouped together only "[w]hen counts involve
the same victim and the same act or transac-
tion," U.S.S.G. § 3D1.2(a), or "[w]hen counts
involve the same victim and two or more acts
or transactions connected by a common crim-
inal objective or constituting part of a com-
mon scheme or plan," *id.* § 3D1.2(b).[7]

The Pre–Sentence Investigation Report
("PSI") completed by Williams's probation
officer recommended that Counts I and II be
assessed separately under the guidelines
rather than grouped together. The report
claimed, "Counts One and Two represent
separate harms and are specifically excluded
from grouping rules in § 3D1.2.... Group
One will represent the harm caused to Frank
Granja and Group Two will represent the
harm caused to Eshaman Ruiz." Williams
filed an objection to the report, stating
"Counts One and Two of the indictment,
which charge a conspiracy to commit a rob-
bery and an attempt to commit a robbery,
are part of a single criminal episode and
should be grouped together, pursuant to
§ 3D1.2(b)." The probation officer again de-
clined to group Counts I and II together,
emphasizing that "[t]he counts cannot be
grouped under either § 3D1.2(a) or (b) since
neither count involved the same 'victim.'"

Williams then filed an objection to the
amended report with the district court, argu-
ing yet again that Counts I and II (conspira-
cy to commit robbery and the attempted
robbery) should have been grouped together.
The district court, without explanation, over-
ruled Williams's objection and adopted the
recommendation of the PSI, putting each
charge in a separate group in calculating
Williams's sentence. Because Counts I and
II were grouped separately, Williams's sen-
tencing range for these counts was 78–97
months; the judge sentenced him to 80
months (plus a mandatory consecutive 120–
month sentence for Count III). Had Counts
I and II been grouped together, Williams
would be eligible for a sentence of between
63–78 months, in addition to his mandatory
sentence for Count III.

## II. STANDARD OF REVIEW

Before turning to the substance of
Williams's claims, it is first necessary to de-
termine the appropriate standard of review.
Federal law states, "The court of appeals ...
shall accept the findings of fact of the district
court unless they are clearly erroneous and,
... shall give due deference to the district
court's application of the guidelines to the
facts." 18 U.S.C. § 3742(e). Our precedent
clearly follows the first part of this statute,
requiring us to review district courts' factual
findings under a "clear error" (or "clearly
erroneous") standard.[8] *See United States v.*

6. If two or more offenses are grouped separately,
each group is assigned an offense level, and these
individual offense levels will be considered in
conjunction with each other to determine the
defendant's "combined offense level." This com-
bined offense level will typically be much higher
than any of the groups' individual offense levels.

If, in contrast, multiple offenses are grouped
together, that group is assigned an offense level
based only on the most serious charge it con-
tains. The other offenses in that group are es-

sentially ignored and do not cause the defendant
to have a higher "combined offense level."
Thus, it is to a defendant's advantage to have as
many charges as possible squeezed into as few
groups as possible.

7. The other circumstances under which multiple
counts may be grouped together are not perti-
nent to the instant case.

8. Because the statute is silent as to the standard
of review for "pure" questions of law, we review
them under our customary *de novo* standard.

*Maung,* 267 F.3d 1113, 1118 (11th Cir.2001) ("When a defendant challenges the district court's application of the sentencing guidelines, we review the district court's underlying findings of fact for clear error...."). For example, "[a] district judge's attribution of drugs to a particular defendant under the Sentencing Guidelines is subject to clearly erroneous review." *United States v. Alred,* 144 F.3d 1405, 1416 (11th Cir.1998). Similarly, "[p]ossession of a firearm for sentencing purposes is a factual finding ... reviewed under a clearly erroneous standard." *United States v. Geffrard,* 87 F.3d 448, 452 (11th Cir.1996). The proper standard of review for a district court's application of the sentencing guidelines to the facts of a particular case, also referred to as "mixed questions of fact and law" involving the guidelines, is much less settled. Section 3742's "due deference" language has proven to be a source of great ambiguity within this circuit, and our caselaw is, to say the least, muddled. Subpart A begins by explaining the various approaches this circuit has taken in considering this matter. Subpart B goes on to explain how "due deference" should not be interpreted as establishing a fixed quantum of review, but instead requires varying degrees of deference to the lower courts based on the precise nature of the guideline provision at issue. Subpart C applies these principles to determine the appropriate standard of review in the instant case.

A. *Prior Interpretations of § 3742(e)'s "Due Deference" Language*

18  U.S.C. § 3742(e) requires the court of appeals to accord "due deference" to a district court's ruling on how the sentencing

guidelines should be applied to the facts before it. Our precedents have not implemented this provision in a wholly consistent manner. This subpart attempts to explain our circuit's various interpretations of the proper standard of review for guidelines cases.

1. *Ignoring 18 U.S.C. § 3742(e)*—We have characterized "question[s] about whether a particular guideline applies to a given set of facts" both as questions of law, *see United States v. Shriver,* 967 F.2d 572, 574 (11th Cir.1992), and (more appropriately) as mixed questions of fact and law, *see United States v. Scroggins,* 880 F.2d 1204, 1206 n. 5 (11th Cir.1989). In general, de novo review is appropriate for both types of issues. *See, e.g., Parker v. Sec'y for the Dep't of Corrs.,* 331 F.3d 764, 765 (11th Cir.2003) ("We review the district court's findings of fact for clear error and its legal conclusions and mixed questions of law and fact de novo.").

It is possible that prior panels simply applied these general principles and, as a result, overlooked § 3742(e) and its "due deference" standard. Consequently, many of our cases simply state, "This court reviews the district court's sentencing hearing findings of fact for clear error and its application of the sentencing guidelines to those facts de novo." *United States v. Renick,* 273 F.3d 1009, 1021 (11th Cir.2001); *accord United States v. De La Mata,* 266 F.3d 1275, 1302 (11th Cir. 2001); *Maung,* 267 F.3d at 1118; *United States v. Jamieson,* 202 F.3d 1293, 1295 (11th Cir.2000); *United States v. Gallo,* 195 F.3d 1278, 1280 (11th Cir.1999); *United States v. Herrera,* 931 F.2d 761, 762 (11th Cir.1991). Even if, in these cases, § 3742's due deference standard was interpreted to mean *de*

*See, e.g., United States v. Calderon,* 127 F.3d 1314, 1339 (11th Cir.1997) ("In reviewing challenges to the application of U.S.S.G. § 3B1.3, we review the legal meaning of the term 'special skills' *de novo.*") (internal quotations omitted);

*United States v. Brenson,* 104 F.3d 1267, 1287 (11th Cir.1997) ("[T]he question of whether conduct by a grand juror justifies the 'abuse of trust' enhancement *is a legal conclusion requiring a de novo review.*").

be applied to the facts be-
redents have not implement-
in a wholly consistent man-
irt attempts to explain our
nterpretations of the proper
w for guidelines cases.

*18 U.S.C. § 3742(e)*—We
·d "question[s] about wheth-
·uideline applies to a given
·h as questions of law, *see
Shriver*, 967 F.2d 572, 574
·ind (more appropriately) as
of fact and law, *see United
ns*, 880 F.2d 1204, 1206 n. 5
In general, *de novo* review
·r both types of issues. *See,
·ec'y for the Dep't of Corrs.,
·5 (11th Cir.2003)* ("We re-
court's findings of fact for
its legal conclusions and
of law and fact de novo.").

·hat prior panels simply ap-
·ral principles and, as a re-
§ 3742(e) and its "due defer-
Consequently, many of our
·te, "This court reviews the
·ntencing hearing findings of
·or and its application of the
·lines to those facts *de novo*."
*Renick*, 273 F.3d 1009, 1021
·*accord United States v. De
F.3d 1275, 1302 (11th Cir.
·267 F.3d at 1118; *United
·n*, 202 F.3d 1293, 1295 (11th
·d States v. Gallo*, 195 F.3d
Cir.1999); *United States v.
·2d 761, 762 (11th Cir.1991).
·e cases, § 3742's due defer-
·as interpreted to mean *de*

*Brenson*, 104 F.3d 1267, 1287
·"[T]he question of whether con-
·juror justifies the 'abuse of trust'
·a legal conclusion requiring a *de*

*novo* review, it is both confusing and improp-
er for a court of appeals, or the parties
appearing before it, to fail to cite this statute
(or a case interpreting this statute) in a
sentencing guidelines appeal.

By its very terms, § 3742 clearly applies to
sentencing guidelines cases. Moreover, we
reject the notion that Congress intended
§ 3742's due deference standard to leave un-
disturbed our general *de novo* standard for
reviewing issues concerning the application
of the law to particular sets of facts. This
"due deference" language was undoubtedly
intended to require, at least in some cases,
greater respect for district court holdings
than is traditionally accorded under *de novo*
review. *See United States v. Malone*, 78
F.3d 518, 520–21 n. 2 (11th Cir.1996) ("The
'due deference' standard in 18 U.S.C. § 3742
'serves as an additional caution against over-
ly intense judicial review.'" (quoting *United
States v. Mejia–Orosco*, 868 F.2d 807, 808
(5th Cir.1989))).

2. *"Due deference" always means de
novo review*—Many of our cases, despite
quoting the due deference standard from
§ 3742(e), nevertheless proclaim in sweeping
terms that "we review the district court's
application of the Sentencing Guidelines *de
novo*." *United States v. Ortiz*, 318 F.3d
1030, 1036 (11th Cir.2003) (internal citation
omitted); *see also United States v. Hall*, 312
F.3d 1250, 1260 n. 12 (11th Cir.2002); *United
States v. Singh*, 291 F.3d 756, 763 (11th
Cir.2002); *United States v. Smith*, 231 F.3d
800, 806–07 (11th Cir.2000). As noted above,
we refuse to interpret the phrase "due defer-
ence" as used in § 3742 as establishing a
blanket *de novo* standard. While, for rea-
sons explained later in this opinion, due def-
erence may have required some panels to
apply *de novo* review in certain cases (given
their facts and the particular guidelines at
issue), those cases should not be read as

establishing a general proposition that due
deference always means *de novo*.

3. *Due deference always means clear er-
ror review*—At least one of our cases has
also strayed to the other extreme, holding
"[W]e review for clear error the district
judge's application of the guidelines to the
facts of the case." *Calderon*, 127 F.3d at
1339. We also arguably equated the due
deference and clear error standards in *Unit-
ed States v. De Varon*, 175 F.3d 930 (11th
Cir.1999) (en banc), where we held, "[A] dis-
trict court's determination of a defendant's
role in the offense is a finding of fact to be
reviewed only for clear error.... [It is] a
fundamentally factual determination entitled
to due deference and not a legal conclusion
subject to *de novo* review." *Id.* at 937–38.
These quotes might suggest that the clear
error and due deference standards were in-
terchangeable for reviewing a district court's
findings of fact.

It is clearly inconsistent with the over-
whelming weight of the precedents discussed
above to conclude that due deference always
means clear error, or that clear error is
always the appropriate standard for review-
ing a district court's application of the guide-
lines to a particular case. Moreover, such
conclusions are contrary to the clear text of
§ 3742, which states that although a district
court's factual determinations should be re-
viewed under a "clear error" standard, its
application of the law should be given only
"due deference." This deliberate variation in
terminology within the same sentence of a
statute suggests that Congress did not inter-
pret the two terms as being equivalent. *See
United States v. Bean*, 537 U.S. 71, 123 S.Ct.
584, 587 n. 4, 154 L.Ed.2d 483, 489 n. 4 (2002)
("The use of different words within related
statutes generally implies that different
meanings were intended." (quoting 2A N.

3436        **U.S. v. WILLIAMS**

Singer, *Sutherland on Statutes and Statutory Construction* § 46.06, at 194 (6th ed.2000))). While clear error review may have been warranted for the guideline at issue in *Calderon*, our precedents should not be read as establishing a uniform rule of always equating the due deference standard with clear error review.

4. *Due deference is either a fixed standard of review independent of the de novo and clear error review*—Many of our cases set forth our general *de novo* standard for reviewing mixed questions of fact and law, then cite § 3742's "due deference" standard for mixed questions involving application of the sentencing guidelines. For example, *United States v. Yount* states, "[W]e give due deference to the district court's application of the guidelines to the facts.... The district court's application of law to the facts is reviewed *de novo.*" 960 F.2d 955, 956 (11th Cir.1992); *accord United States v. Geffrard,* 87 F.3d 448, 452 (11th Cir.1996) ("[T]he application of the law to the facts found is reviewed *de novo.* The application of the guidelines to the facts, however, is entitled to 'due deference.'" (citation omitted)); *Singh,* 291 F.3d at 763.[9]

These passages are misleading on several grounds. First, in distinguishing between application of "the guidelines" and application of "the law," they obscure the fact that the guidelines *are* the law. Second, the passages can be interpreted in two different ways, both of which are erroneous. On the one hand, one might interpret this passage to mean that we review *de novo* all mixed questions of fact and law, including questions

involving application of the guidelines, but in the course of doing so we somehow accord the district court's ruling some special degree of deference. This is apparently the approach we took in *United States v. Hall,* where we held, "Although this Court, *as part of its de novo review,* gives due deference to the district court's application of the guidelines to the facts, this Court is not bound by the district court's application of the guidelines to the facts and our review remains *de novo.*" 312 F.3d 1250, 1262 n. 16 (11th Cir. 2002) (emphasis added). This understanding is also conveyed by cases such as *United States v. McIntosh* wherein we held, "We review the district court's application of the sentencing guidelines *de novo,* giving due deference to the district court's refusal to group multiple counts under U.S.S.G. § 3D1.2." 216 F.3d 1251, 1253 (11th Cir. 2000).

It is unclear how we can give due deference to a district court's conclusions when applying *de novo* (literally, "of nothing") review, since *de novo* review requires us to look at a question as if we are the first court to consider it. Put simply, it is definitionally impossible to give deference of any sort to a decision being reviewed *de novo.* Moreover, none of these cases explain how a *de novo* review involving "due deference" to the district court would differ from a *de novo* review not involving such deference. Thus, the *Hall/McIntosh* interpretation of the above-quoted passage from *Yount* is both unenlightening and internally contradictory.

The only other possible interpretation is that while *in general* we review mixed questions of fact and law *de novo,* we apply a

special, indep dard when the cation of the would imply th of intermedia between *de* This interpret en the text erroneous. F next subpart, gress intended establish a ne view.

B. *The* § 374

[1] This our precedent dard of review tion of the sen factual scenar and law" invol with Supreme § 3742(e) that overlooked. opinions within preted § 3742 statute's clear preme Court sence of a cas as our panel' this subject, to guide fut complex issue

1. *Suprem* preme Court In *Koon v. U* 116 S.Ct. 203 the Court held "due deferenc

[t]he defere nature of district cou

---

9. This is essentially the approach for which the Government advocated in the instant case. *See Brief for the United States,* at *8 ("This Court reviews the district court's ... application of the sentencing guidelines *de novo.* Furthermore,

this Court reviews the district court's refusal to group multiple counts under USSG § 3D1.2 [sic] with due deference.") (internal citations omitted).

on of the guidelines, but in
1g so we somehow accord
s ruling some special de-
-. This is apparently the
in *United States v. Hall,*
lthough this Court, *as part
iew,* gives due deference to
s application of the guide-
this Court is not bound by
s application of the guide-
and our review remains *de*
1250, 1262 n. 16 (11th Cir.
dded). This understanding
by cases such as *United
sh* wherein we held, "We
t court's application of the
lines *de novo,* giving due
district court's refusal to
counts under U.S.S.G.
'.3d 1251, 1253 (11th Cir.

ow we can give due defer-
t court's conclusions when
(literally, of nothing") re-
o review requires us to look
if we are the first court to
simply, it is definitionally
e deference of any sort to a
viewed *de novo.* Moreover,
ses explain how a *de novo*
"due deference" to the dis-
differ from a *de novo* re-
g such deference. Thus, the
nterpretation of the above-
from *Yount* is both unen-
ernally contradictory.

r possible interpretation is
*eral* we review mixed ques-
l law *de novo,* we apply a

s the district court's refusal to
ounts under USSG § 3D1.2 [sic]
nce.") (internal citations omit-

special, independent "due deference" stan-
dard when the mixed question involves appli-
cation of the sentencing guidelines. This
would imply that due deference is a standard
of intermediate scrutiny falling somewhere
between *de novo* and clearly erroneous.
This interpretation is not only a stretch, giv-
en the text of those opinions, but is also
erroneous. For the reasons discussed in the
next subpart, we do not believe that Con-
gress intended the phrase "due deference" to
establish a new, independent standard of re-
view.

### B. *The Correct Interpretation of § 3742(e)'s "Due Deference" Language*

[1] This subpart attempts to harmonize
our precedents concerning the proper stan-
dard of review for a district court's applica-
tion of the sentencing guidelines to particular
factual scenarios ("mixed questions of fact
and law" involving the guidelines). We begin
with Supreme Court decisions interpreting
§ 3742(e) that most of our precedents have
overlooked. We then turn to a handful of
opinions within this circuit that have inter-
preted § 3742(e) in accordance with both the
statute's clear language as well as these Su-
preme Court precedents. Finally, in the ab-
sence of a case that can clearly be identified
as our panel's earliest definitive ruling on
this subject, we set forth general principles
to guide future panels in resolving these
complex issues.

1. *Supreme Court precedent*—Two Su-
preme Court cases shed light on § 3742(e).
In *Koon v. United States,* 518 U.S. 81, 98,
116 S.Ct. 2035, 2046, 135 L.Ed.2d 392 (1996),
the Court held, while interpreting § 3742(e)'s
"due deference" requirement,

[t]he deference that is due depends on the
nature of the question presented. The
district court may be owed no deference,

for instance, when the claim on appeal is
that it made some sort of mathematical
error in applying the Guidelines; under
these circumstances, the appellate court
will be in as good a position to consider the
question as the district court was in the
first instance.

Five years later, in *Buford v. United States,*
532 U.S. 59, 121 S.Ct. 1276, 149 L.Ed.2d 197
(2001), the Court applied *Koon*'s "sliding
scale" understanding of "due deference."
The *Buford* Court considered the degree of
deference due a district court's holding that a
defendant's prior convictions had not been
"functionally consolidated," to determine
whether a § 4B1 enhancement for repeat
offenders was appropriate. *Id.* at 63, 121
S.Ct. at 1279.

The *Buford* Court upheld the Seventh Cir-
cuit's decision to apply a particularly defer-
ential standard of review, akin to "clearly
erroneous," to this type of decision. It stat-
ed, "[T]he district court is in a better position
than the appellate court to decide whether a
particular set of individual circumstances
demonstrates 'functional consolidation' [of
prior sentences, because] ... [a]s a trial
judge, a district judge is likely to be more
familiar with trial and sentencing practices in
general, including consolidation procedures."
*Id.* at 64, 121 S.Ct. at 1280. The Court also
emphasized:

The legal question at issue is a minor,
detailed, interstitial question of sentencing
law.... That question is not a generally
recurring, purely legal matter, such as in-
terpreting a set of legal words, say, those
of an individual guideline.... Nor is that
question readily resolved by reference to
general legal principles and standards
alone. Rather, the question at issue grows

3438

**U.S. v. WILLIAMS**

out of, and is bounded by, case-specific detailed factual circumstances.

*Id.* at 65, 121 S.Ct. at 1280–81.

These cases lead to several conclusions. *Koon* tells us that "due deference" is not a fixed standard of scrutiny akin to *de novo* or "clear error" review, but instead establishes a "sliding scale." When reviewing decisions involving the application of certain types of guidelines, no deference will be due a district court's rulings, effectively leading to *de novo* review. With other guidelines, an appellate court should accord the trial court's decisions a high degree of deference, reviewing those rulings under the substantive equivalent of a "clear error" standard.

*Buford* shows us how to distinguish between guidelines requiring significant deference and those requiring no deference. The two most important factors are: (1) whether the ruling depends on a wide range of facts that are more readily available to the district court than to the court of appeals, due to the district court's first-hand experience trying the case, and (2) whether the issue primarily involves a legal interpretation of a guideline (suggesting *de novo* review), or instead involves the application of a clearly-established, well-understood legal standard or principle to a detailed fact pattern (indicating "clear error" review). "Clear error" review is particularly appropriate in the latter type of cases because "the fact-bound nature of the decision limits the value of appellate court precedent." *Buford,* 532 U.S. at 65–66, 121 S.Ct. at 1281. These principles are more fully fleshed out with reference to our own precedents, to which we now turn.

2. *The Sliding Scale Interpretation of § 3742 in the Eleventh Circuit*—Despite the wide range of our circuit's interpretations of § 3742's "due deference" language, discussed in the previous Subpart, our precedents are

not entirely without support for the Supreme Court's sliding scale approach. *See, e.g., United States v. Taylor,* 88 F.3d 938, 942 (11th Cir.1996) (recognizing that the meaning of the term "due deference" depends on the particular guidelines at issue). One of our early guidelines cases, *United States v. Malgoza,* 2 F.3d 1107 (11th Cir.1993), best exemplifies this understanding of § 3742. Citing the Fourth Circuit, we held, "To say that we review a finding with due deference means that we give the district court the deference that is due in regard to that finding. The deference due will depend upon whether the determination is primarily factual or legal." *Id.* at 1109 (*citing United States v. Daughtrey,* 874 F.2d 213, 217 (4th Cir.1989)). We explained,

> When the district court's application of sentencing guidelines to facts involves primarily a legal decision, such as the interpretation of a statutory term, less deference is due to the district court than when the determination is primarily factual.... In contrast, when an application of the guidelines to facts is closer to a pure question of fact, the appellate court will review the application with the deference due under the clearly erroneous standard.

*Id.* at 1109–10 (citations omitted). This holding reflects the principles articulated above. Where a determination turns primarily on the evaluation of facts (such as a witness's credibility, intonation, and demeanor) that are more accessible to the district court than to the court of appeals, we will defer to the district court's application of the law to those facts and apply "clear error" review. Similarly, a case involving application of a fairly well-understood legal standard to a complex factual scenario will be considered "primarily factual," and be reviewed for clear error. Most other cases, in contrast, will be reviewed *de novo.*

...out support for the Supreme scale approach. *See, e.g., , Taylor,* 88 F.3d 938, 942 (recognizing that the meaning 3 deference" depends on the lines at issue). One of our cases, *United States v. Mal-* 7 (11th Cir.1993), best exem- rstanding of § 3742. Citing .iit, we held, "To say that we , with due deference means : district court the deference egard to that finding. The ill depend upon whether the · primarily factual or legal." *ng United States v. Daugh-* 13, 217 (4th Cir.1989)). We

strict court's application of idelines to facts involves pri- decision, such as the inter- . statutory term, less defer- the district court than when tion is primarily factual.... when an application of the acts is closer to a pure ques- e appellate court will review 1 with the deference due un- · erroneous standard.

itations omitted). This hold- principles articulated above. nination turns primarily on f facts (such as a witness's iation, and demeanor) that ble to the district court than ppeals, we will defer to the pplication of the law to those "clear error" review. Simi- olving application of a fairly legal standard to a complex will be considered "primarily e reviewed for clear error. es, in contrast, will be re-

a. *Specific types of cases in which de novo review is particularly appropriate*— Unless a case falls into one of the categories specified above, *de novo* review of the district court's application of the law to the facts of the case is generally appropriate. *But see infra* Part I.B.3. Many (but certainly not all) cases in which we apply *de novo* review involve legal issues for which most or all of the relevant facts are contained in the counts in the indictment for which the defendant has been convicted or pled guilty. For example, in *United States v. Smith,* 231 F.3d 800 (11th Cir.2000), one of the defendants was the county's deputy registrar of voters. She was convicted of, among other things, fraudulent- ly submitting an absentee ballot on behalf of a voter without that voter's knowledge or consent. We did not have to go far beyond the allegations contained in the indictment to affirm the district court's ruling that this offense, under the circumstances, involved an "abuse[ ][of] a position of public or private trust." *Id.* at 819 (quoting U.S.S.G. § 3B1.3). Consequently, there was no spe- cial need to defer to the district court's as- sessments, and *de novo* review was appropri- ate. *Id.* at 806 ("We review the district court's application of the Sentencing Guide- lines *de novo* ...."). Similarly, in *United States v. Singh,* 291 F.3d 756, 762 (11th Cir.2002), we reviewed the district court's interpretation of U.S.S.G. § 2F1.1(b)(6), which provides for an offense-level enhance- ment if part of a fraud is committed outside of the United States. Because it was un- doubtedly apparent from the indictment whether part of the fraud for which the defendant was convicted had occurred in a different country, *de novo* review was appro- priate. *See Singh,* 291 F.3d at 762 (*citing United States v. Bradford,* 277 F.3d 1311, 1312 (11th Cir.2002)). Another reason *de novo* review was appropriate in *Singh* was because our opinion focused more on inter-

preting the guideline's language than on dig- ging through a complex factual record.

*De novo* review is also warranted in cases where we must determine whether the dis- trict court applied the correct sentencing guideline (or subsection of a sentencing guideline) for the defendant's underlying con- duct. *See, e.g., United States v. De La Mata,* 266 F.3d 1275, 1302 (11th Cir.2001) (review- ing *de novo* the district court's decision as to whether the "money laundering" or "fraud" sentencing guideline was more appropriate, given the facts of the case); *Smith,* 231 F.3d at 806–07, 818–19 (applying *de novo* review and upholding district court's decision to ap- ply U.S.S.G. § 2H2.1(a)(2) instead of § 2H2.1(a)(3) because "[t]he offenses for which [defendants] were convicted involved ... the forging of other voters' names on applications of absentee ballot and affidavits of absentee voter"). Such matters turn pri- marily on the contents of the indictment and interpretation of the sentencing guidelines, areas for which we are not especially depen- dent on district courts.

b. *Specific types of cases in which "clear error" review is particularly appropriate*—A key factor in determining whether "due def- erence" requires us to review a district court's application of the guidelines in a par- ticular case is the degree to which its ruling is based upon a variety of "intangible" fac- tors that a district judge is in a better posi- tion than we are to assess. With certain types of issues, a variety of considerations may have a significant influence on the judge's determination, yet cannot be ade- quately reflected in the cold, barren waste- land of the record. For example, U.S.S.G. § 3C1.1 provides for a two-level enhance- ment if the defendant engaged in obstruction of justice during the course of the investiga- tion, prosecution, or sentencing of his crime.

One way in which a defendant may obstruct justice is by perjuring himself at trial.[10] *See* U.S.S.G. § 3C1.1, cmt. n. 4(b) ("The following is a non-exhaustive list of examples of the types of conduct to which this adjustment applies: ... committing, suborning, or attempting to suborn perjury."). An appellate court is not in a position to assess a defendant's demeanor, apparent sincerity, intonation, expression, gesticulations, and a wide range of other considerations that are pertinent in determining whether he has perjured himself. *See also Owens v. Wainwright*, 698 F.2d 1111, 1113 (11th Cir.1983) ("Appellate courts reviewing a cold record give particular deference to credibility determinations of a fact-finder who had the opportunity to see live testimony."); *United States v. De Varon*, 175 F.3d 930, 938 (11th Cir.1999) (en banc) ("Intensely factual inquiries ... are properly consigned to the experienced discretion of the district judge."); *see also United States v. Abbell*, 271 F.3d 1286, 1303 (11th Cir.2001) ("[B]ecause the demeanor of the pertinent juror is important to juror misconduct determinations, the district court is uniquely situated to make the credibility determinations that must be made in cases like this one: where a juror's motivations and intentions are at issue.").

Consequently, it is not only appropriate, but necessary, for us to accord special deference to district court rulings under guidelines such as § 3C1.1 when matters such as perjury are at issue (by reviewing the district court's determinations only for "clear error"). *E.g., Singh*, 291 F.3d at 764 ("[W]e cannot say that the district court's decision to enhance [defendant's] adjusted offense level pursuant to U.S.S.G. § 3C1.1 was clearly erroneous. Therefore, we affirm the district

court on this issue."). However, because § 3C1.1 encompasses a wide range of conduct which can obstruct justice, we need not examine all § 3C1.1 enhancements with special deference. For example, in *United States v. Taylor*, we reviewed *de novo* a court's two-level enhancement for obstruction of justice under § 3C1.1 for a defendant who had "repeatedly refused to provide the government with handwriting exemplars, and when he finally did, h[ad] attempted to disguise his writing." 88 F.3d at 941–42. Unlike the perjury at issue in *Singh*, there was no need for a particularized assessment of the credibility or demeanor of the defendant in *Taylor*. The pertinent conduct (failing to provide the handwriting exemplars) could clearly be set forth in detailed, non-conclusory findings by the district court, which were accorded great deference. Consequently, we were in a much better position to review *de novo* the district court's application of the obstruction of justice guideline to those facts than in a typical perjury case. *Id.* at 942. Thus, even with regard to application of a particular guideline, the degree of deference "due" a district court can vary dramatically based on the allegations at issue.

Because of the importance of determining a defendant's apparent sincerity through firsthand observation, we have also accorded special deference to district court rulings concerning offense-level reductions under § 3E1.1 for a defendant's acceptance of responsibility, reviewing them under a "clear error" standard as well. *See, e.g., United States v. Brenson*, 104 F.3d 1267, 1288 (11th Cir.1997) ("We review the district court's decision as to acceptance of responsibility only for clear error."); *United States v. Pritchett*, 908 F.2d 816, 824 (11th Cir.1990) ("The dis-

---

**10.** Perjury involves making a false statement "with the willful intent to provide false testimony, rather than as a result of confusion, mistake,

or faulty memory." *Singh*, 291 F.3d at 763 (quoting *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993)).

. However, because
a wide range of con-
t justice, we need not
hancements with spe-
example, in *United*
reviewed *de novo* a
:ement for obstruction
1 for a defendant who
d to provide the gov-
iting exemplars, and
ad] attempted to dis-
F.3d at 941–42. Un-
ie in *Singh*, there was
larized assessment of
anor of the defendant
ent conduct (failing to
ing exemplars) could
letailed, non-concluso-
rict court, which were
ice. Consequently, we
· position to review *de*
't's application of the
:uideline to those facts
ury case. *Id.* at 942.
rd to application of a
ie degree of deference
can vary dramatically
is at issue.

ortance of determining
ent sincerity through
we have also accorded
district court rulings
vel reductions under
int's acceptance of re-
: them under a "clear
·ell. *See, e.g., United*
I F.3d 1267, 1288 (11th
the district court's de-
e of responsibility only
*ited States v. Pritchett*,
th Cir.1990) ("The dis-

*Singh,* 291 F.3d at 763
v. *Dunnigan,* 507 U.S. 87,
I22 L.Ed.2d 445 (1993)).

trict court is in a unique position to evaluate
whether a defendant has accepted responsi-
bility for his acts, and the determination is
entitled to great deference on review. Un-
less a court's determination is without foun-
dation, it should not be overturned on ap-
peal.").

Of course, these are only some of the most
common types of cases where § 3742's "due
deference" requirement will require us to
apply a "clear error" standard to district
courts' resolutions of mixed questions of fact
and law involving the guidelines. As dis-
cussed earlier, the Supreme Court's ruling in
*Buford,* as well as our own holding in *Malgo-
za,* remind us that whenever a district court's
determination is best characterized as the
application of a clear-cut standard to a com-
plex set of facts, rather than a legal interpre-
tation that can have broader value beyond
the instant case, "clear error" review is gen-
erally appropriate.

3. *Exception to the Two–Step Process of
Review: "Dispositive" Factual Findings—*
Some guidelines are fairly cut-and-dry; after
reviewing the district court's factual findings
for clear error, it is rather apparent whether
or not a particular enhancement applies. In
these cases, the factual findings tend to be
rather concrete and specific (e.g., the defen-
dant either had a firearm, or he didn't), or
involve "lay" judgment calls that rely more
on common-sense, everyday assessments
than on specialized legal knowledge (e.g., did
the defendant play a "major" or "minor" role
in the criminal scheme).

Technically, of course, we must review a
district court's application of the guidelines
to the facts, even in these cases. As a prac-
tical matter, however, once we come to a
conclusion as to the district court's factual
findings, the question of the applicability of a
guideline of this type practically answers it-

self. We frequently decline to specify a level
of deference to accord the district court's
application of these guidelines simply be-
cause the issue is essentially moot—the fac-
tual findings all but determine the outcome.
Thus, as a type of shorthand, this court often
characterizes questions of these guidelines'
applicability as reviewable under a "clearly
erroneous" standard. While the "clearly er-
roneous" standard technically applies only to
the district court's factual findings, those
findings tend to be absolutely dispositive of
issues involving these types of guidelines.

For example, in *United States v. Alred,*
144 F.3d 1405 (11th Cir.1998), this court re-
viewed a district court's ruling imposing an
offense-level enhancement under U.S.S.G.
§ 2D1.1(b)(1) because the defendant pos-
sessed a firearm in conjunction with his of-
fense. We noted, "We review a sentencing
judge's factual findings ... for clear error."
*Id.* at 1420. After upholding the district
court's finding that the defendant possessed
a firearm in connection with his drug distri-
bution, we had no choice but to affirm its
imposition of a two-level enhancement under
§ 2D1.1(b). *Id.* ("We conclude that the facts
that the district judge used as the basis for
the section 2D1.1(b)(1) enhancement were
not clearly erroneous. Thus, [the defen-
dant's] enhancement for possession of fire-
arms was appropriate."); *see also United
States v. Geffrard,* 87 F.3d 448, 452 (11th
Cir.1996) ("Possession of a firearm for sen-
tencing purposes is a factual finding.").
There was no need to get into the require-
ments of "due deference" or to review the
district court's application of the law to those
clear-cut facts. The court did not have to
make any independent legal determinations
or draw any further conclusions.

Similarly, in *United States v. De Varon,* we
held that "a district court's determination of
whether a defendant qualifies for a minor

U.S. v. WILLIAMS

role adjustment under the Guidelines is a finding of fact that will be reviewed only for clear error." 175 F.3d at 934. We explained, "[T]he ultimate determination of [the size of a defendant's] role in the offense is ... a fundamentally factual determination entitled to due deference and not a legal conclusion subject to de novo review." Id. at 938; see also United States v. Calderon, 127 F.3d 1314, 1341 (11th Cir.1997) ("[W]e review the district judge's factual determination [concerning the size of the defendant's role] for clear error." Of course, once we affirmed this factual finding (under the "clear error" standard), the question of a downward adjustment under § 3B1.2 (for defendants who play only a minor role) was essentially settled. Again, there was no need for either us or the district court to draw further legal conclusions.

This reasoning has also been applied on the other end of the spectrum. Determinations as to whether defendants played "managerial" roles have been treated as questions of pure fact that do not raise questions about the pertinent guideline's application and are reviewed under the clearly erroneous standard. United States v. Glinton, 154 F.3d 1245, 1260 (11th Cir.1998) ("The district court's determination is reviewed under the clearly erroneous rule.").

It is critical to emphasize that this type of analysis—essentially folding our legal conclusions into the district court's factual findings—is nothing more than a shorthand we use when we feel there is nothing to be gained by looking at a district court's application of a clear-cut principle to a particular set of facts. In the majority of cases, however, there is usually some sort of legal determination to be made even after the fact-finding is done. As a result, our usual practice is to examine the district court's application of the law to the facts separately, according this

determination the level of deference it is due under § 3742 (as discussed in the previous subpart). See, e.g., United States v. Hall, 312 F.3d 1250, 1260–61 (11th Cir.2002) (applying a de novo standard of review in determining whether "the district court erred in failing to apply a four-level sentence enhancement under U.S.S.G. § 2G2.2(b)(3) (2001)" for trafficking child pornography that portrayed "sadistic conduct"); Singh, 291 F.3d at 762 (reviewing de novo a district court's decision to apply a two-level enhancement under U.S.S.G. § 2F1.1(b)(6)(B) "because a substantial part of the fraudulent scheme of which [the defendant] was convicted was committed from outside of the United States"); Taylor, 88 F.3d at 942 (applying a de novo standard in reviewing the district court's application of U.S.S.G. § 2A6.1(b)(1) for defendants who engage in "any conduct evidencing an intent to carry out [a] threat"). This line is admittedly indistinct and uncertain, but we are bound by our precedents and so must adhere to this doctrine.

[2] 4. A Concluding Note about Upward and Downward Departures—Of course, nothing in this opinion is meant to affect the manner in which we review district court rulings concerning upward or downward departures. "We review the district court's discretionary refusal to depart downward only if the district court erroneously believed it did not have the statutory authority to do so." De La Mata, 266 F.3d at 1303; see also Calderon, 127 F.3d at 1342 ("[D]ownward departure is a matter of discretion that rests with the district judge and is ordinarily not appealable.... [W]e simply have no jurisdiction to review the district judge's discretionary decision unless it was made based upon the belief that he did not possess such discretion."). In contrast, "[w]e review a district court's decision to [upward-

*[handwritten annotation:]* 18 U.S.C. §3742(e) requires that, when reviewing a district court's decision to grant an upward or downward departure, we "review de novo the district court's application of the [sentencing] guidelines to the facts."

**U.S. v. WILLIAMS**     3443

ly] depart from the Guidelines for an abuse of discretion." *United States v. Melvin,* 187 F.3d 1316, 1320 (11th Cir.1999).

### C. *Standard of Review for This Case*

Williams asks us to review the district court's grouping of his offenses. Since this question clearly involves the application of the guidelines to Williams's case, § 3742 requires us to review this question "with due deference" to the district court's ruling. *See United States v. Bradford,* 277 F.3d 1311, 1312 (11th Cir.2002) ("[T]his Court views the district court's refusal to group multiple counts under § 3D1.2 with due deference."); *accord United States v. Tillmon,* 195 F.3d 640, 642 (11th Cir.1999); *United States v. McIntosh,* 216 F.3d 1251, 1253 (11th Cir. 2000); *United States v. Bonner,* 85 F.3d 522, 525 (11th Cir.1996). Notwithstanding the implication of these cases—that "due deference" is either a substantive standard in its own right, or a sort of modification on *de novo* review—the preceding discussion makes clear that "due deference" requires us to assess the type of question we are reviewing in order to determine the degree of respect to accord the district court's findings.

[3] Applying our *Malgoza* standard, the question of whether charges should have been grouped differently seems "primarily" one of law rather than of fact. We need not rely on the district court's factfinding, because the charges of which the defendant was convicted are clearly set forth in the indictment. To resolve this issue, we merely must interpret and apply § 3D1.2's standards to these charges. Moreover, unlike *Buford,* this case does not involve an overly complex or unique fact pattern that will render our decision of little value in future cases. Thus, we need not afford the district court's

ruling any special deference, and we review its ruling de novo.

### III.

[4] Having established the proper standard of review, we now turn to the substance of Williams's claims. He argues that Counts I and II—for conspiring to rob the armored car and attempting to rob the armored car, respectively—should have been grouped together under either § 3D1.2(a) or (b). We consider each section in turn.

### A. *Grouping Multiple Counts Under § 3D1.2(a)*

U.S.S.G. § 3D1.2(a) is not applicable because multiple crimes must be committed in the same general area and at approximately the same time to be considered part of the "same act or transaction." The guidelines provide the following example:

> The defendant is convicted of two counts of assault on a federal officer for shooting at the same officer twice while attempting to prevent apprehension as part of a single criminal episode. The counts are to be grouped together.... *But:* The defendant is convicted of two counts of assault on a federal officer for shooting at the officer on two separate days. The counts *are not* to be grouped together.

*Id.* § 3D1.2, cmt. n. 3 (emphasis in original). In virtually all cases, a conspiracy is formed prior to the underlying offense it concerns, and in a place other than where that offense is to be committed. Thus, the formation of the conspiracy and the commission of the underlying crime are more akin to shooting the federal officer on two separate days than shooting him twice "as part of a single criminal episode." *Id.* Only where the conspiracy and the underlying offense are roughly contemporaneous with each other—that is,

*[left margin column, partial text:]*

level of deference it is due discussed in the previous ..., *United States v. Hall,* ...0–61 (11th Cir.2002) (ap- ·andard of review in deter- he district court erred in . four-level sentence en- U.S.S.G. § 2G2.2(b)(3) ng child pornography that .e conduct"); *Singh,* 291 ·wing *de novo* a district ipply a two-level enhance- .G. § 2F1.1(b)(6)(B) "be- l part of the fraudulent ie defendant] was convict- ·rom outside of the United 8 F.3d at 942 (applying a in reviewing the district of U.S.S.G. § 2A6.1(b)(1) , engage in "any conduct t to carry out [a] threat"). ·dly indistinct and uncer- ·nd by our precedents and iis doctrine.

*luding Note about Up- nward Departures*—Of this opinion is meant to i which we review district ·rning upward or down- "We review the district ·· refusal to depart down- istrict court erroneously ave the statutory authori- : *Mata,* 266 F.3d at 1303; i, 127 F.3d at 1342 ·ture is a matter of dis- th the district judge and ealable.... [W]e simply i to review the district y decision unless it was ie belief that he did not on."). In contrast, "[w]e ·rt's decision to [upward-

when they are in both temporal and physical proximity with each other—are they part of the "same act or transaction" as contemplated by § 3D1.2(a). As we held in *United States v. Beard*, 960 F.2d 965, 969 (11th Cir.1992), "the passage of time between offenses, differences in place of the offense, the nature of the offense, and the intervening circumstances taken together may justify separate grouping of the offenses."

### B. *Grouping Multiple Counts Under § 3D1.2(b)*

Consequently, if Counts I and II are to be grouped together, it must be under U.S.S.G. § 3D1.2(b) (requiring counts to be grouped when they "involve the same victim and two or more acts or transactions connected by a common objective or constituting part of a common scheme or plan"). The conspiracy to rob the armored car and the attempted robbery of that car were clearly parts of the same "common plan or scheme." In fact, the attempted robbery of the armored car was the sole objective of the conspiracy.

Thus, the only real issue is whether these acts involved the same victim. Inexplicably, the PSI concluded that these counts involved separate victims, stating "Group One [including only Count I] will represent the harm caused to Frank Granja and Group Two [including only Count II] will represent the harm caused to Eshaman Ruiz." This makes no sense. Count I was a conspiracy to rob the armored car; Count II was the attempt-

ed robbery of that car. It is impossible to claim that only Frank Granja was harmed by the conspiracy, while only Eshaman Ruiz was harmed by the attempted robbery. Both men were attacked during the robbery, and both were put in jeopardy by the formation of the conspiracy. The only reasonable explanation is that both men were victims of both offenses. Although as the government claims, multiple "counts arising out of a single transaction or occurrence [may not be] grouped together ... when there are distinct victims," *see Brief for the United States,* at *10 (quoting U.S.S.G. § 3D1.2, cmt. background), the victims of the two offenses at issue here are the same. Consequently, the offenses are suitable for grouping under § 3D1.2.[11] As a matter of law, a conspiracy to commit a substantive offense will almost always have the same victims as the commission (or attempted commission) of that substantive offense, and so the two should almost always be grouped together under § 3D1.2. This result is essentially mandated by the commentary to the guidelines, which states, "When one count charges a conspiracy or solicitation and the other charges a substantive offense that was the sole object of the conspiracy or solicitation, the counts will be grouped together under subsection (b)." U.S.S.G. § 3D1.2, cmt. n. 4.

Thus, we do not contest the government's claim that Williams's conduct "resulted in 'two separate victims.'" *Brief for the United States,* at *6. However, this observation

---

11. Williams's attorney made this same point during Williams's sentencing hearing:

  The probation officer's analysis fails because the probation officer concluded that one guard was the victim of the conspiracy and another guard is the victim of the robbery. That is clearly not what happened here. And as far as the conspiracy, either both guards were also the victim of the conspiracy or no one was the

  victim of the conspiracy. But [it cannot be argued that] one guard was ... the victim of the conspiracy and one guard was ... the victim of the robbery. That doesn't make common sense. The indictment charges one conspiracy with 2 victims. And the robbery charge, the indictment charges one robbery with two victims.

  *Trans.* Apr. 3, 2002, at *4.

car. It is impossible to
nk Granja was harmed by
e only Eshaman Ruiz was
tempted robbery. Both
during the robbery, and
eopardy by the formation
The only reasonable ex-
oth men were victims of
nough as the government
unts arising out of a sin-
occurrence [may not be]
.. when there are distinct
*for the United States,* at
;.G. § 3D1.2, cmt. back-
s of the two offenses is
same. Consequently, the
ole for grouping under
atter of law, a conspiracy
ntive offense will almost
he victims as the commis-
commission) of that sub-
d so the two should al-
grouped together under
It is essentially mandated
to the guidelines, which
count charges a conspira-
nd the other charges a
that was the sole object
r solicitation, the counts
gether under subsection
1.2, cmt. n. 4.

contest the government's
's conduct "resulted in
s.'" *Brief for the United*
wever, this observation

spiracy. But [it cannot be
guard was ... the victim of
id one guard was ... the
ry. That doesn't make com-
ndictment charges one con-
ictims. And the robbery
ment charges one robbery

t *4.

does not allow the Government to separate
two offenses that would otherwise be
grouped together by arbitrarily "assigning"
one victim to each offense where there is no
clear basis for doing so. As discussed above,
it is precisely because there were the same
"two separate victims" for *each* of Williams's
offenses that we must group them together.
If the Government wanted to punish
Williams separately for the harm he inflicted
upon each individual driver, it should have
included two aggravated assault or attempt-
ed murder counts in the indictment.[12]

[5] Our conclusion compels us to reject
the notion, implicit in the government's argu-
ment, that each offense can have only one
"victim." The Commentary to the Sentenc-
ing Guidelines states, "Generally, there will
be one person who is directly and most seri-
ously affected by the offense and is therefore
identifiable as the victim." U.S.S.G. § 3D1.2,
cmt. n. 2. While such commentary is binding
on us, *see Stinson v. United States,* 508 U.S.
36, 38, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598

(1993) ("[C]ommentary in the Guidelines
Manual that interprets or explains a guide-
line is authoritative unless it violates the
Constitution or a federal statute, or is incon-
sistent with, or a plainly erroneous reading
of, that guideline."), this particular statement
is a broad generalization rather than an in-
flexible rule that must be applied in every
single case. Where offenses such as the
robbery and conspiracy at issue here equally
harm multiple people, the guidelines do not
force us to designate the "one real victim."
The main purpose of this provision is simply
to emphasize that "secondary victims," such
as bystanders who may be traumatized at the
sight of a crime, should not be counted as
victims when grouping offenses under
§ 3D1.2. *See* U.S.S.G. § 3D1.2, cmt. n. 2
("The term 'victim' is not intended to include
indirect or secondary victims.").

Consequently, Appellant's sentences on
Counts I and II are VACATED, and the case
is REMANDED for resentencing.

SO ORDERED.

---

12. It is possible, however, that aggravated as-
sault charges would have been grouped together
with the robbery. *See* U.S.S.G. ch.3, pt.D, intro-
ductory cmt. ("Other offenses, such as an as-
sault causing bodily injury to a teller during a
bank robbery, are so closely related to the more

serious offense that it would be appropriate to
treat them as part of the more serious of-
fense....").

A True Copy - Attested:
Clerk, U.S. Court of Appeals
Eleventh Circuit

By:
Deputy Clerk
Atlanta, Georgia

Adm. Office, U.S. Courts—West, a Thomson business, Saint Paul, Minn.